1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

JERRY ADAMSKY, on behalf of her minor
child, LESLIE BERRY, on behalf of her
minor child, VALERIE BERTHELOT, on
behalf of her minor child, DESIREE
BLACKBURN, on behalf of her minor child,
JENNIFER BOIT, on behalf of her minor
child, JULIE BROWN, on behalf of her
minor child, SARAH CHARACTER, on
behalf of her minor child, LINDSAY
COLON, on behalf of her minor child,
KRISTI FINLEY, on behalf of her minor
child, CHRISTINA GARDNER, on behalf of
her minor child, TARA GRAY, on behalf of
her minor child, SHANE HOWARD, on
behalf of his minor child, JENNIFER
LEFLORE, on behalf of her minor child,
ANDRA LOGAN, on behalf of her minor
child, JENNIFER MAURER, on behalf of
her minor child, MONICA MENDEZ, on
behalf of her minor child, ERICA MOORE,
on behalf of her minor child, BRANDIE
MORGAN, on behalf of her minor child,
SAYUJ PAUDEL, on behalf of her minor
child, TARA PITTMAN, on behalf of her
minor child, LYNDI REICHENBACH, on
behalf of her minor child, CRYSTAL
SEGURA, on behalf of her minor child,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CASE NO.**

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

CLASS ACTION COMPLAINT
Case No.

-1-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

1   TIFFANY SEVCIK, on behalf of her minor       )
2   child, BREANNA SIMPSON, on behalf of         )
    her minor child, GARY STANGO, JR., on        )
3   behalf of his minor child, NYKITA STEEN,     )
4   on behalf of her minor child, MEGAN          )
    TAYLOR, on behalf of her minor child,        )
5   MARQUITA TUCKER, on behalf of her            )
6   minor child, MARK WADE, on behalf of his     )
    minor child, ALLISON WINSKE, on behalf       )
7   of her minor child, JESSICA XAGORARIS,       )
8   on behalf of her minor child, PATRICK        )
    YOCKEY, on behalf of his minor child, and    )
9   ROBERT YOUNG, on behalf of his minor         )
10  child, individually and on behalf of all others )
    similarly situated,                          )
11                                               )
12          Plaintiffs,                          )
                                                 )
13  v.                                           )
                                                 )
14  AMAZON.COM, INC., a Delaware                 )
15  corporation, and A2Z DEVELOPMENT             )
    CENTER, INC., a Delaware corporation,        )
16                                               )
17          Defendants.                          )
18  _____

19          Plaintiffs,[1] by and through their parents and/or guardians, bring this action against

20  AMAZON.COM, INC. and A2Z DEVELOPMENT CENTER, INC. ("Defendants," collectively

21  referred to herein as "Amazon"), on behalf of themselves and all others similarly situated, to obtain

22  damages, restitution, and injunctive relief for the Classes, as defined below, from Defendants.

23  Plaintiffs make the following allegations upon information and belief, except as to their own

24  actions, the investigation of their counsel, and the facts that are a matter of public record:

25  _____

26  [1] Plaintiffs refer to the individuals referenced in the caption above and described more fully in paragraphs
    6 to 38 below.

CLASS ACTION COMPLAINT
Case No.                                                          -2-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## INTRODUCTION

1.      This action is about the protection of our most vulnerable members of society: children—who, while using Defendants' Echo Dot Kids Edition smart speaker, had their personally identifying information, including voiceprints, collected, disclosed and used by Defendants without consent.  On behalf of their minor children, Plaintiffs bring claims under state and federal laws to obtain an injunction to cease these practices, sequester illegally obtained information, and recover damages.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over the state law claims asserted herein pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), since some of the Class Members are citizens of a State different from the Defendants and, upon the original filing of this complaint, members of the putative Plaintiff class resided in states around the country; there are more than 100 putative class members; and the amount in controversy exceeds $5 million.

3.      This Court has personal jurisdiction over the Parties because Defendants are headquartered in this District and conduct a major part of its national operations with regular and continuous business activity in this District.

4.      Venue is proper under 28 U.S.C. § 1391(c) because Defendants are corporations that do business in and are subject to personal jurisdiction in this District. Venue is also proper because a substantial part of the events or omissions giving rise to the claims in this action occurred in or emanated from this District.

## PARTIES

5.      Plaintiffs, by and through their parents and/or legal guardians, are minors who were younger than the age of 13 when they used the Echo Dot Kids Edition and from whom Amazon collected, used, or disclosed personal information, including voiceprints, without verifiable parental consent.

CLASS ACTION COMPLAINT
Case No.

-3-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

6.      Plaintiff A. and Plaintiff's parent, Jerry Adamsky, reside in Valhalla, New York. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use her child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

7.      Plaintiff B. and Plaintiff's parent, Leslie Berry, reside in Louisville, Kentucky. Plaintiff used the Echo Dot Kids Edition while under the age of 13. Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use her child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

8.      Plaintiff B. and Plaintiff's parent, Valerie Berthelot, reside in Port Allen, Louisiana. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use her child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

9.      Plaintiff B. and Plaintiff's parent, Desiree Blackburn, reside in Delavan, Wisconsin. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use her child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

10.     Plaintiff B. and Plaintiff's parent, Jennifer Boit, reside in Alexandria, Virginia. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use her child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

CLASS ACTION COMPLAINT
Case No.
-4-
IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

1    11.    Plaintiff B. and Plaintiff's parent, Julie Brown, reside in McKinney, Texas. Plaintiff

2    used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not asked for

3    verifiable parental consent to collect, disclose, or use her child's personal information, including

4    persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting,

5    using, and disclosing Plaintiff's personal information.

6    12.    Plaintiff C. and Plaintiff's parent, Sarah Character, reside in Butler, Georgia.

7    Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not

8    asked for verifiable parental consent to collect, disclose, or use her child's personal information,

9    including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to

10    collecting, using, and disclosing Plaintiff's personal information.

11    13.    Plaintiff C. and Plaintiff's parent, Lindsay Colon, reside in Homasassa, Florida.

12    Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not

13    asked for verifiable parental consent to collect, disclose, or use her child's personal information,

14    including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to

15    collecting, using, and disclosing Plaintiff's personal information.

16    14.    Plaintiff F. and Plaintiff's parent, Kristi Finley, reside in San Manuel, Arizona.

17    Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not

18    asked for verifiable parental consent to collect, disclose, or use her child's personal information,

19    including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to

20    collecting, using, and disclosing Plaintiff's personal information.

21    15.    Plaintiff G. and Plaintiff's parent, Christina Gardner, reside in Middletown,

22    Delaware. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent

23    was not asked for verifiable parental consent to collect, disclose, or use her child's personal

24    information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with

25    regard to collecting, using, and disclosing Plaintiff's personal information.

26

CLASS ACTION COMPLAINT
Case No.                                                     -5-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

16.     Plaintiff G. and Plaintiff's parent, Tara Gray, reside in Houston, Texas. Plaintiff used the Echo Dot Kids Edition while under the age of 13. Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use her child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

17.     Plaintiff H. and Plaintiff's parent, Shane Howard, reside in Coral Springs, Florida. Plaintiff used the Echo Dot Kids Edition while under the age of 13. Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use his child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

18.     Plaintiff L. and Plaintiff's parent, Jennifer Leflore, reside in Montgomery, Alabama. Plaintiff used the Echo Dot Kids Edition while under the age of 13. Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use her child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

19.     Plaintiff L. and Plaintiff's parent, Andra Logan, reside in Toccoa, Georgia. Plaintiff used the Echo Dot Kids Edition while under the age of 13. Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use her child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

20.     Plaintiff M. and Plaintiff's parent, Jennifer Maurer, reside in Harker Heights, Texas. Plaintiff used the Echo Dot Kids Edition while under the age of 13. Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use her child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

CLASS ACTION COMPLAINT
Case No.
-6-
IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

1    21.    Plaintiff M. and Plaintiff's parent, Monica Mendez, reside in Wilmington,

2  California. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent

3  was not asked for verifiable parental consent to collect, disclose, or use her child's personal

4  information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with

5  regard to collecting, using, and disclosing Plaintiff's personal information.

6    22.    Plaintiff M. and Plaintiff's parent, Erica Moore, reside in Girard, Ohio. Plaintiff

7  used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not asked for

8  verifiable parental consent to collect, disclose, or use her child's personal information, including

9  persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting,

10  using, and disclosing Plaintiff's personal information.

11    23.    Plaintiff M. and Plaintiff's parent, Brandie Morgan, reside in Johnson City, New

12  York. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was

13  not asked for verifiable parental consent to collect, disclose, or use her child's personal

14  information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with

15  regard to collecting, using, and disclosing Plaintiff's personal information.

16    24.    Plaintiff P. and Plaintiff's parent, Sayuj Paudel, reside in Winchester,

17  Massachusetts. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's

18  parent was not asked for verifiable parental consent to collect, disclose, or use her child's personal

19  information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with

20  regard to collecting, using, and disclosing Plaintiff's personal information.

21    25.    Plaintiff P. and Plaintiff's parent, Tara Pittman, reside in Greensboro, North

22  Carolina. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent

23  was not asked for verifiable parental consent to collect, disclose, or use her child's personal

24  information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with

25  regard to collecting, using, and disclosing Plaintiff's personal information.

26

CLASS ACTION COMPLAINT
Case No.
-7-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

1
2
3
4
5

26.     Plaintiff R. and Plaintiff's parent, Lyndi Reichenbach, reside in Hornbrook, California. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use her child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

6
7
8
9
10

27.     Plaintiff S. and Plaintiff's parent, Crystal Segura, reside in Humble, Texas. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use her child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

11
12
13
14
15

28.     Plaintiff S. and Plaintiff's parent, Tiffany Sevcik, reside in Amboy, Minnesota. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use her child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

16
17
18
19
20

29.     Plaintiff S. and Plaintiff's parent, Breanna Simpson, reside in Nacogdoches, Texas. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use her child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

21
22
23
24
25

30.     Plaintiff S. and Plaintiff's parent, Gary Stango, Jr., reside in Goshen, Connecticut. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use his child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

26

CLASS ACTION COMPLAINT
Case No.

-8-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

31.     Plaintiff S. and Plaintiff's parent, Nykita Steen, reside in Redford, Michigan. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use her child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

32.     Plaintiff T. and Plaintiff's parent, Megan Taylor, reside in Grayslake, Illinois. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use her child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

33.     Plaintiff T. and Plaintiff's parent, Marquita Tucker, reside in Canton, Mississippi. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use her child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

34.     Plaintiff W. and Plaintiff's parent, Mark Wade, reside in Las Vegas, Nevada. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use his child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

35.     Plaintiff W. and Plaintiff's parent, Allison Winske, reside in Woodstock, Georgia. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use her child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

CLASS ACTION COMPLAINT
Case No.
-9-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

36.     Plaintiff X. and Plaintiff's parent, Jessica Xagoraris, reside in Hyde Park, Vermont. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use her child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

37.     Plaintiff Y. and Plaintiff's parent, Patrick Yockey, reside in New Kensington, Pennsylvania. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use his child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

38.     Plaintiff Y. and Plaintiff's parent, Robert Young, reside in San Tan Valley, Arizona. Plaintiff used the Echo Dot Kids Edition while under the age of 13.  Plaintiff's parent was not asked for verifiable parental consent to collect, disclose, or use his child's personal information, including persistent identifiers, nor was Plaintiff's parent provided direct notice with regard to collecting, using, and disclosing Plaintiff's personal information.

39.     Defendants AMAZON.COM, INC. is a corporation with its headquarters and principal place of business in Washington and in this District.

40.     Defendant A2Z DEVELOPMENT CENTER, INC., is a Delaware corporation with its headquarters and principal place of business in Sunnyvale, California.   Defendant A2Z DEVELOPMENT CENTER, INC., transacts or has transacted business in this District and throughout the United States.

41.     At all times material to this Complaint, acting alone or in concert with others, Defendants advertised, marketed, and distributed smart speaker devices, including the Echo Dot Kids Edition, intended for use by consumers throughout the United States.  At all times material to this Complaint, Defendants formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.

CLASS ACTION COMPLAINT
Case No.
-10-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# FACTUAL ALLEGATIONS
## *Federal Law Prohibits the Collection and Recording of*
## *Children's Personal Information, including Voiceprints, Absent Express Parental Consent*

42.   Recognizing the vulnerability of children in the Internet age, in 1999 Congress enacted the Children's Online Privacy Protection Act ("COPPA").[2]   COPPA's express goal is to protect children's privacy while they are connected to the internet.  Under COPPA, developers of child-focused apps, devices, or voice controlled interactive intelligent speakers, cannot lawfully obtain the personal information of children under 13 years of age without first obtaining verifiable consent from their parents.

43.   COPPA applies to any operator of an online service (including an app which runs a voice controlled interactive intelligent speaker) that is directed to children and that: (a) collects, uses, and/or discloses personal information from children, or (b) on whose behalf such information is collected or maintained.[3]

44.   Under COPPA, personal information is also "collected or maintained on behalf of an operator when…[t]he operator benefits by allowing another person to collect personal information directly from users of" an online service.[4]

45.   Under COPPA's broad definition, "personal information" includes voice recordings (i.e., voiceprints) and persistent identifiers.[5]   The FTC regards "persistent identifiers" as "personally identifiable" information that can be reasonably linked to a particular

---

[2] See 15 U.S.C. §§ 6501–6506.
[3] See 16 C.F.R. §312.3.
[4] See 16 C.F.R. §312.2.
[5] See 16 C.F.R. §312.2 (COPPA's broad definition of "personal information" is as follows:  "individually identifiable information about an individual collected online," which includes (1) a first and last name; (2) a physical address including street name and name of a city or town; (3) online contact information (separately defined as "an email address or any other substantially similar identifier that permits direct contact with a person online"); (4) a screen name or user name; (5) telephone number; (6) social security number; (7) a media file containing a child's image or voice; (8) geolocation information sufficient to identify street name and name of a city or town; (9) a "persistent identifier that can be used to recognize a user over time and across different Web sites or online services" (including but not limited to "a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier"); and (10) any information concerning the child or the child's parents that the operator collects then combines with an identifier).

CLASS ACTION COMPLAINT
Case No.

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

child. The FTC amended COPPA's definition of "personal information" to clarify the inclusion of persistent identifiers.[6]

46.     In order to lawfully collect, use, or disclose personal information, COPPA requires that an operator meet specific requirements, including *each* of the following:

a)  Posting a privacy policy on its website or online service providing clear, understandable, and complete notice of its information practices, including what information the website operator collects from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures as set forth in the Rule;

b)  Providing clear, understandable, and complete notice of its information practices, including specific disclosures, directly to parents; and

c)  Obtaining verifiable parental consent prior to collecting, using, and/or disclosing personal information from children.

47.     Under COPPA, "[o]btaining verifiable consent means making any reasonable effort (taking into consideration available technology) to ensure that before personal information is collected from a child, a parent of the child. . . [r]eceives notice of the operator's personal information collection, use, and disclosure practices; and [a]uthorizes any collection, use, and/or disclosure of the personal information." 16 C.F.R. § 312.2.

48.     The FTC recently clarified acceptable methods for obtaining verifiable parental consent, which include, *inter alia*, the following:

a)  providing a consent form for parents to sign and return;

b)  requiring the use of a credit card/online payment that provides notification of each transaction;

c)  connecting to trained personnel via video conference;

d)  calling a staffed toll-free number;

---

[6]  See https://www.ftc.gov/news-events/blogs/business-blog/2016/04/keeping-online advertising-industry (2016 FTC Blog post from Director of the FTC Bureau of Consumer Protection) (last visited Aug. 2, 2019).

CLASS ACTION COMPLAINT
Case No.
-12-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

e) emailing the parent soliciting a response email plus requesting follow-up information from the parent;

f) asking knowledge-based questions; or

g) verifying a photo ID from the parent compared to a second photo using facial recognition technology.[7]

***Amazon Collected and Used Children's Personal
Information, including Voiceprints, Through the Echo Dot Kids Edition***

49.     Amazon Alexa ("Alexa") is a cloud-based voice service available on over 100 million devices from both Amazon and third-party device manufacturers.[8]

50.     The cloud is a vast global network of remote servers that are hooked together and meant to operate as a single ecosystem, storing and managing data, running applications, and delivering content.[9]

51.     Alexa relies on ambient computing to provide customers an intuitive way for consumers to interact with technology that they use every day and encourages consumers to build their voice network by adding new capabilities, connecting Alexa to other devices, and integrating Alexa directly into products.[10]

52.     Ambient computing relies on the Internet of Things ("IoT") which is the concept of connecting any device that has an on/off switch with all other similar devices.[11]

53.     According to Windows Central, IoT is an interconnected array of computing devices, objects, and machines with unique identifiers that are capable of transferring data over a network without human-to-human or human-to-computer interaction.[12]

---

[7] *See* https://www.ftc.gov/tips-advice/business-center/guidance/childrens-online-privacy-protection-rule-six-step-compliance (last visited Aug. 2, 2019).

[8] https://developer.amazon.com/alexa (last visited Aug. 2, 2019).

[9] https://azure.microsoft.com/en-us/overview/what-is-the-cloud/ (last visited Aug. 2, 2019).

[10] https://developer.amazon.com/alexa, highlighting Mark Cuban stating, "There's no future that doesn't have ambient computing or voice activation." (last visited Aug. 2, 2019).

[11] https://www.forbes.com/sites/jacobmorgan/2014/05/13/simple-explanation-internet-things-that-anyone-can-understand/ (last visited Aug. 2, 2019).

[12] https://www.windowscentral.com/what-ambient-computing-and-why-does-it-matter (last visited Aug. 2, 2019).

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

54.     The IoT is the connection of devices of various purposes and complexity, including home devices, smart cars, home speakers, and community intelligent surveillance to name a few.[13]

55.     According to one analyst firm, the IoT will be comprised of 26 billion connected devices by the year 2020 spanning relationships between people and people, people and things, and things and things.[14]   According to Windows Central, the number of devices will be 34 billion, well over four times the human population.[15]   Anything that can be connected will be connected, and they will all be talking to each other.[16]

56.     To that end, Amazon makes portable smart speakers of multiple generations that, by connecting to the Internet, offer Alexa's voice service in a consumer's home using a range of speaker technology and options, such as the Amazon Echo and Amazon Echo Dot.

57.     In order to connect the Echo Dot or other Amazon product to Alexa, a user must first download the Alexa App.

58.     Once installed and connected, Alexa starts to listen.  Alexa is always passively listening, waiting for its wake-up command, and thereafter listening and recording any other information that may be provided by someone in the room.

59.     Alexa's voice control has far-field voice recognition that allows it to hear from across the room.[17]

60.     Alexa awakens when it hears a "wake word," which, by default, is set to "Alexa". Once the wake word is spoken, Alexa starts to stream audio to the Amazon Cloud.[18]

---

[13] https://www.windowscentral.com/what-ambient-computing-and-why-does-it-matter (last visited Aug. 2, 2019).
[14] https://www.forbes.com/sites/jacobmorgan/2014/05/13/simple-explanation-internet-things-that-anyone-can-understand/ (last visited Aug. 2, 2019).
[15] https://www.windowscentral.com/what-ambient-computing-and-why-does-it-matter (last visited Aug. 2, 2019).
[16] https://www.forbes.com/sites/jacobmorgan/2014/05/13/simple-explanation-internet-things-that-anyone-can-understand/ (last visited Aug. 2, 2019).
[17] https://www.amazon.com/Echo-Kids-smart-speaker-Alexa/dp/B077JFPCPX (last visited Aug. 2, 2019).
[18] Ex. 1, (June 1, 2018 letter from Brian Huseman, Vice President of Public Policy for Amazon, to Honorable Edward Markey, U.S. Senate and Honorable Joe Barton, U.S. House of Representatives.)

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

61.     Once in the cloud, using speech recognition and natural language understanding, Amazon converts the audio to text and stores it indefinitely.[19]

62.     The Echo Dot can provide additional functionality if the user adds "Skills" to the device, which is essentially Amazon's term for an "app".[20]  Unlike other "apps," Amazon's Echo Skills are controlled by voice.[21]

63.     The Alexa software contains an "Answer Updates" function which Alexa will prompt a user to turn on if Alexa does not know the answer to a question.[22]  This allows Alexa to respond to a question at a later date after Alexa has learned the answer.

64.     As Amazon says, its voice user interface is "quickly becoming capable and robust. . . . paving the way toward fully conversational, multi-modal interactions that extend to mobile, wearables, and even virtual reality.[23]  Due to advances in machine learning, according to Amazon, its voice user interface is learning and adapting to a user's speech patterns, preferences, and contexts over time.[24]  According to Toni Reid, Amazon's vice president for the Alexa Experience and Echo Devices Group, as of August 2018, the company was striving to make Alexa more "humanlike", with personalization being the focus for the future of Alexa.[25]

65.     In 2018, Amazon launched the Echo Dot Kids Edition.

66.     The default "wake" word for Echo Dot Kids Edition is "Alexa."[26]

---

[19] Ex. 1, (June 1, 2018 letter from Brian Huseman, Vice President of Public Policy for Amazon, to Honorable Edward Markey, U.S. Senate and Honorable Joe Barton, U.S. House of Representatives.)
[20] https://www.cnet.com/how-to/amazon-echo-most-useful-alexa-skills/ (last visited Aug. 2, 2019); https://developer.amazon.com/en-US/alexa/alexa-skills-kit/vui (last visited Aug. 2, 2019).
[21] https://www.cnet.com/how-to/amazon-echo-most-useful-alexa-skills/ (last visited Aug. 2, 2019); https://developer.amazon.com/en-US/alexa/alexa-skills-kit/vui (last visited Aug. 2, 2019).
[22] https://www.digitaltrends.com/news/amazon-answer-updates-feature/ (last visited Aug. 2, 2019); https://www.theverge.com/2018/8/6/17658444/amazon-alexa-answer-update-new-feature-question (last visited Aug. 2, 2019).
[23] https://developer.amazon.com/en-US/alexa/alexa-skills-kit/vui (last visited Aug. 2, 2019).
[24] https://developer.amazon.com/en-US/alexa/alexa-skills-kit/vui (last visited Aug. 2, 2019).
[25] https://developer.amazon.com/en-US/alexa/alexa-skills-kit/vui (last visited Aug. 2, 2019).
[26] Ex. 1, (June 1, 2018 letter from Brian Huseman, Vice President of Public Policy for Amazon, to Honorable Edward Markey, U.S. Senate and Honorable Joe Barton, U.S. House of Representatives.)

CLASS ACTION COMPLAINT
Case No.
-15-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

67.     As with the Echo Dot, the Echo Dot Kids Edition can be enhanced with "Kid Skills."[27]  Kid Skills are "intended for children under the age of 13."[28]

68.     Echo Dot Kids Edition, using Alexa software and Kid Skills, is designed specifically for kids to be able to play music, answer questions, tell stories, control other compatible devices, provide positive feedback when kids ask questions, tell jokes, and more.[29]

69.     The Alexa software is further designed to record, remember, and later recite back anything that a child asks it to remember.[30]  Echo Dot Kids Edition "cannot be used without Amazon processing voice recordings."[31]

### *Amazon's Echo Dot Kids Edition Unlawfully Collected and Used Children's Personal Information Without Parental Consent*

70.     Amazon, through its sale of the Echo Dot Kids Edition, is an "operator" as defined under COPPA, because the Echo Dot Kids Edition is an IoT device that relies on an Internet connection and Amazon services to use Amazon's cloud to collect and maintain personal information about users that utilize its online services.[32]

---

[27] https://developer.amazon.com/en-US/alexa/alexa-skills-kit/kids (last visited Aug. 2, 2019).
[28] https://developer.amazon.com/en-US/alexa/alexa-skills-kit/kids (last visited Aug. 2, 2019).
[29] https://www.amazon.com/Echo-Kids-smart-speaker-Alexa/dp/B077JFPCPX (last visited Aug. 2, 2019).
[30] https://www.echokidsprivacy.com/#readcomplaint, referencing Exhibit 3-1 (A screen shot taken from an Alexa App Dashboard page after asking the Echo to "remember" certain facts and days later asking the Echo "what do you remember?").
[31] Ex. 1, (June 1, 2018 letter from Brian Huseman, Vice President of Public Policy for Amazon, to Honorable Edward Markey, U.S. Senate and Honorable Joe Barton, U.S. House of Representatives.)
[32] 16 C.F.R. §312.2 defines an "operator," in pertinent part, as: any person who operates a Web site located on the Internet or an online service and who collects or maintains personal information from or about the users of or visitors to such Web site or online service, or on whose behalf such information is collected or maintained, or offers products or services for sale through that Web site or online service, where such Web site or online service is operated for commercial purposes involving commerce among the several States or with 1 or more foreign nations; in any territory of the United States or in the District of Columbia, or between any such territory and another such territory or any State or foreign nation; or between the District of Columbia and any State, territory, or foreign nation; *See* https://internetofthingsagenda.techtarget.com/blog/IoT-Agenda/The-rise-of-voice-control-in-the-internet-of-things; https://www.amazon.com/gp/help/customer/display.html?nodeId=202011800 (last visited Aug. 2, 2019); https://developer.amazon.com/en-US/alexa/alexa-skills-kit/kids (last visited Aug. 2, 2019).

CLASS ACTION COMPLAINT
Case No.
-16-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

71.     The Echo Dot Kids Edition collects "personal information," as defined by COPPA, because it collects audio files, i.e., voiceprints, containing a child's voice from any child who speaks in the same room as the device.[33]

72.     The Echo Dot Kids Edition collects persistent identifiers associated with a child such as MAC (media access control) addresses of devices, serial numbers, and IP addresses which are all transmitted to the Amazon Cloud and stored in association with the child's profile and the accumulating cache of audio voice recordings.

73.     Additionally, the Echo Dot Kids Edition collects other information about a child in connection with the persistent identifiers, such as " . . . information about the books, music, and skills a child uses . . ." so that it can make recommendations to and for the child – all for commercial gain, of course.[34]

74.     Further, the Echo Dot Kids Edition is specifically designed to collect information from a child with its "Remember This" feature which allows Alexa to store information conveyed by the child by saying either "remember" or "make a note".[35]   This feature enables Alexa to develop a relationship with a child, which results in the child confiding to Alexa whereby Alexa eerily becomes a personal online "diary," held by Amazon.

75.     Alexa's "Answer Update" function, if activated, calls for Alexa to respond to questions at a later date if she learns new information pertaining to the question.[36]   In order to have the option to answer the question at a later date, Alexa's programming must be such that she collects and stores the question, indefinitely.

76.     In all, Amazon collects at least four types of personal information about children through the Echo Dot Kids Edition: 1) voice recordings, 2) persistent identifiers associated with

---

[33] https://www.ftc.gov/news-events/press-releases/2017/10/ftc-provides-additional-guidance-coppa-voice-recordings (last visited Aug. 2, 2019).
[34] Ex. 1, (June 1, 2018 letter from Brian Huseman, Vice President of Public Policy for Amazon, to Honorable Edward Markey, U.S. Senate and Honorable Joe Barton, U.S. House of Representatives.)
[35] https://www.theverge.com/2018/5/1/17307256/amazon-echo-remember-this; https://www.consumerreports.org/privacy/amazon-echo-dot-kids-violates-privacy-rules-advocates-claim/
[36] See https://www.theverge.com/2018/8/6/17658444/amazon-alexa-answer-update-new-feature-question (last visited Aug. 2, 2019).

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

the child, 3) other information about a child associated with the persistent identifier, and 4) personal information offered by the child for the device to "remember."

77.     When it comes to the collection, use, and disclosure of a child's "personal information", Amazon must give Direct Notice to the parent, the requirements and contents of which must be very specific under federal law.[37]  This is to ensure that parents of children are provided with "key information" in a succinct "just in time" fashion.[38]

78.     Amazon's purported 'notice' of its collection practices fall woefully short.

79.     When parents first set up the Echo Dot Kids Edition, they are provided with the following screen titled Parental Consent:



80.     Defendant's purported "Parental Consent" mechanism is legally inadequate in that it is generic, general, and vague in nature.  In particular, it gives examples of information rather

[37] 16 C.F.R. §312.4 (b) & (c)(1-4).
[38] Statement of Basis and Purpose, 78 Fed. Reg. at 3984.

CLASS ACTION COMPLAINT
Case No.                                                    -18-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

than specifics. What's more, it fails to identify how information is to be used and fails to inform whether information will be disclosed to a third party.

81.     In particular, Defendant's purported "Parental Consent" mechanism vaguely and generically describes that Amazon offers "some" services intended for children, and in "some" cases Amazon may know a child is using a service, and that children "may" share personal information, and that Amazon "may" collect it. To address how they collect, use, and disclose this unspecified personal information, Amazon defers to another online webpage, its Children's Privacy Disclosure.

82.     The generic and vague purported 'notice' therefore does not ensure that "key information" is provided to parents in a "just in time" fashion, which is the required method put forth by the Federal Trade Commission.[39] All it does is ask the reader to agree to litany of "coulds" and "maybes".

83.     Further, the purported "Parental Consent" mechanism is only displayed during the set-up process and not prior to engaging with any newly enabled Skill. Thus, the reader of the purported "Parental Consent" is asked to provide consent prior to knowing what Skills (apps) the child may be using in the future and also what disclosures may possibly be made to third parties during that usage.

84.     Aside from its legally inadequate 'Direct Notice', Amazon's "Online Notice"— which is supposed to describe what information is collected, whether the service enables a child to make personal information publicly available, how Amazon uses the information, and the disclosure practices for the information—also fails to pass muster.[40]

85.     Amazon's purported Online Notice, titled "Child Privacy Disclosure", is shown in very fine print below in the following image:

---

[39] Statement of Basis and Purpose, 78 Fed. Reg. at 3984.
[40] See 16 C.F.R. §312.4(d)(1-3).

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15
16
87.
17
18
19
20
21
22
23
24
25
26

86.     Again, the purported Disclosure does not describe the actual information it collects.
Like the purported Direct Notice, it provides a litany of "coulds" and "maybes".

87.     It does not adequately describe whether its service enables a child to make
information publicly available.  Rather, it kicks the can down the road by indicating that a child
"may be" able to make information publicly available "depending" on what products and services
the child uses.

88.     The purported Child Privacy Disclosure also fails to provide notice about Amazon's
sharing of personal information.   Instead, it simply defers to the Amazon Privacy Notice (without
even disclosing the actual address of the Notice).

89.     One such Privacy Notice can be found on the Internet.[41]

---

[41]https://www.amazon.com/gp/help/customer/display.html?ref=asus_gen_not?ie=UTF8&nodeId=468496
(last visited Aug. 2, 2019).

CLASS ACTION COMPLAINT
Case No.

-20-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

90.     That particular notice is lengthy, not child specific, not specific to Echo or Echo Dot Kids Edition, confusing, and includes a variety of seemingly unrelated topics

91.     For example, the Privacy Notice discloses that Amazon collects "search term and search result information from some searches conducted through the Web search features offered by our subsidiary, Alexa Internet," but it does not say whether it does so when a child is using the Echo Dot Kids Edition.[42]  In fact, the Privacy Notice is geared more toward online shopping than assisting parents in understanding privacy rights as they pertain to the audio recordings and other personal information of their children.  The Privacy Notice clearly contains information that is unrelated, confusing and contradictory, all of which are prohibited by COPPA.[43]

92.     Amazon is also required to give notice and obtain consent for information collected by third parties through its online services.[44]

93.     However, Amazon fails to disclose anywhere in its purported 'Notice' how much information is transmitted to or collected by Kid Skill developers.

94.     What's more, Amazon's purported 'Children Privacy Disclosure' disclaims any responsibility for third party practices, including the Kid Skills, by stating, "[t]his disclosure does not apply to the practices of any third-party services (including apps, skills, and websites) that may be accessed through an Amazon product or service."

95.     The purported notice regarding third parties is not specific as to any entity or the type of personal information that may be collected.  Indeed, rather than comply with its FTC mandated obligation, Amazon admittedly disclaims it.

---

[42]https://www.amazon.com/gp/help/customer/display.html?ref=asus_gen_not?ie=UTF8&nodeId=468496 (last visited Aug. 2, 2019).
[43] 16 C.F.R. §312.4(a).
[44] Statement of Basis and Purpose, 78 Fed. Reg. at 3976-3977. ("It cannot be the responsibility of parents to try to pierce the complex infrastructure of entities that may be collecting their children's personal information through any one site.  For child-directed properties, one entity, at least, must be strictly responsible for providing parents notice and obtaining consent when personal information is collected through that site.  The Commission believes that the primary-content site or service is in the best position to know which plug-ins it integrates into its site, and is also in the best opposition to give notice and obtain consent from the parties.").

CLASS ACTION COMPLAINT
Case No.

-21-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

96.     Even worse, according to research performed by the Campaign for a Commercial Free Childhood & Center for Digital Democracy et al. (hereinafter, the "Campaign"), in support of the Request for Investigation of Amazon, Inc.'s Echo Dot Kids Edition for Violating the Children's Online Privacy Protection Act, submitted to the FTC on May 9, 2019, 84.6% of the Kid Skills did not have a link to a privacy policy.[45]

97.     On top of its disclosure failures, Amazon's purported "consent" mechanisms are also legally inadequate.

98.     Under COPPA, "[o]btaining verifiable consent means making any reasonable effort (taking into consideration available technology) to ensure that before personal information is collected from a child, a parent of the child. . . [r]eceives notice of the operator's personal information collection, use, and disclosure practices; and [a]uthorizes any collection, use, and/or disclosure of the personal information."[46]

99.     Amazon's purported parental consent mechanism fails to comply with the acceptable methods listed by COPPA, all of which apply specifically to a "parent".[47]  Amazon uses its own method which, given the technology available, is unreasonable, as it does not even ensure that the person providing the supposed consent is the child's parent.

100.    The Amazon purported consent process allows for a person to enter a Visa Gift Card in order to give verifiable consent.   Not only is this insufficient to establish someone is a

---

[45] https://www.echokidsprivacy.com/ (last accessed Aug. 2, 2019).

[46] 16 C.F.R. §312.2.

[47] *See* 16 C.F.R. §312.5(b) ((i) Providing a consent form to be signed by the parent and returned to the operator by postal mail, facsimile, or electronic scan; (ii) Requiring a parent, in connection with a monetary transaction, to use a credit card, debit card, or other online payment system that provides notification of each discrete transaction to the primary account holder; (iii) Having a parent call a toll-free telephone number staffed by trained personnel; (iv) Having a parent connect to trained personnel via video-conference; (v) Verifying a parent's identity by checking a form of government-issued identification against databases of such information, where the parent's identification is deleted by the operator from its records promptly after such verification is complete; or (vi) *Provided that,* an operator that does not "disclose" (as defined by § 312.2) children's personal information, may use an email coupled with additional steps to provide assurances that the person providing the consent is the parent. Such additional steps include: Sending a confirmatory email to the parent following receipt of consent, or obtaining a postal address or telephone number from the parent and confirming the parent's consent by letter or telephone call. An operator that uses this method must provide notice that the parent can revoke any consent given in response to the earlier email).

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

parent, it is insufficient to establish someone is even an adult.  Gift cards are often given to kids and can be purchased by kids under 13 at various locations including Wal-Mart, CVS, gas stations, etc.  Additionally, the card is not charged by Amazon, thereby failing to provide notice of the "discrete transaction," as required by law.  Indeed, this gift card method was tested by the Campaign and shown to work to bypass the consent process.[48]

101.    An even bigger problem is the fact that Amazon altogether fails to obtain verifiable consent and/or provide any notice whatsoever to parents whose children visit another child who owns the Echo Dot Kids Edition, whether they be neighbors, friends, stepsiblings, cousins, or even siblings.  The first thing a kid wants to do with a new toy is show their friends.  A parent whose child may be visiting a friend's house will have no notice of, or be able to consent to, their child's voiceprint being recorded and/or the collection of any other personal information.  One can easily envision the excitement of the visiting child being introduced to their friend's new toy.  One can envision the friend's response to seeing the new toy being, "so cool, I want to try."  One may also envision the questions that may be raised in the mind of the visiting child's parents when that child comes home and excitedly conveys, "I told Alexa my birthday and she totally remembered it two hours later, she even knows my name."

102.    What's more, Amazon has the technology to use personalized voice recognition to avoid these issues, i.e., only record the child of whose consent Amazon purportedly obtained.[49]  In particular, Alexa has the capability to record a visiting child's voice both with and without the use of personalized voice recognition.[50]  Enabling the voice recognition feature would allow Alexa to distinguish between whom it records.  Even though this technology is available, Amazon does not utilize it to comply with COPPA notice and consent requirements when it pertains to visiting children.

103.    Amazon's data and information retention and destruction policies in respect to the Echo Dot Kids Edition also fail to pass muster, violating both state and federal law.

---

[48] https://www.echokidsprivacy.com/, Ex 1-9 through 1-11 (last accessed Aug. 2, 2019).
[49] https://www.cnet.com/how-to/how-to-setup-voice-profiles-on-the-amazon-echo-alexa/ (last accessed Aug. 2, 2019).
[50] *Id*.

CLASS ACTION COMPLAINT
Case No.

-23-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

104.    Under federal law, Amazon may only retain a child's personal information reasonably long enough to fulfill the purpose for which it was collected, following which the "operator", Amazon, must delete it.[51]

105.    The Amazon Children's Privacy Disclosure, while outlining some very broad reasons it stores a child's personal information, does not inform the parent when it will be deleted, absent a specific request of a parent pertaining to a particular piece of information.  According to Brian Huseman, Vice President of Public Policy for Amazon, "Parents also can delete all voice recordings associated with their child's device at the Manage Your Account and Devices page at www.amazon.com/mycd."[52]

106.    However, placing the burden on parents to delete their child's personal information is unreasonable and unlawful.  Amazon cannot transfer its legal obligations to parents – particularly through its vague and confusing purported Children's Privacy Disclosure.  Absent action by the parent, the personal information is kept indefinitely.  Perhaps indefinite unrestricted collection is the real purpose the information was collected in the first place.

107.    Further, the parent of a visiting child does not even have access to or knowledge of the Amazon Manage Your Account and Devices page for another child, through which they could delete their child's unauthorized recording.

108.    Amazon is legally required (but fails) to provide methods which are not unreasonably burdensome to a parent to review and delete their child's personal information.[53]

109.    Indeed, Amazon's purported Children's Privacy Policy does not explain the review and delete process but simply refers the parent to another site page or advises the user to contact Customer Service.

110.    When a parent finally does get to the section allowing them to review their child's voice history - or for that matter some other child's voice history – there is no method to search

---

[51] See 16 C.F.R. §312.10; https://www.ftc.gov/news-events/blogs/business-blog/2018/05/under-coppa-data-deletion-isnt-just-good-idea-its-law (last accessed Aug. 2, 2019).
[52] Ex. 1, (June 1, 2018 letter from Brian Huseman, Vice President of Public Policy for Amazon, to Honorable Edward Markey, U.S. Senate and Honorable Joe Barton, U.S. House of Representatives.)
[53] See 16 C.F.R. §312.6.

CLASS ACTION COMPLAINT
Case No.

-24-

voice records with specificity.  For example, a parent can't search by the word "sad" or "hurt" or "sex" or "cry".  A parent must either listen to all recordings (to identify their child's voice) or read all transcriptions, one at a time, to ascertain the type of information that has been recorded. One can imagine the thousands of recordings, including those involved with interactive games, that a parent must sort through to learn what their child or another child may have disclosed to Alexa.

111.    What's more, once a parent has reached the stage of directing Amazon to delete a voice recording, research indicates that the underlying information may not be deleted.[54]

112.    For example, the Campaign performed numerous tests in respect to the Alexa "Remember This" feature.  Those tests research showed that edits did not take, that deletions did not stay deleted, and that Alexa refused to forget.   According to the Campaign, after numerous tests, the only way they could delete a child's information was through contacting customer service who advised that the only method was to delete the child's entire profile.[55]

113.    In sum, Amazon's Echo Dot Kids Edition violates numerous state and federal laws by, *inter alia*, failing to: (i) provide proper disclosures, (ii) obtain proper consent, and (iii) collect and retain personally identifying information in a legally permissible fashion.

114.    The Campaign sums it up best: "Amazon markets Echo Dot Kids as a device to educate and entertain kids, but the real purpose is to amass a treasure trove of sensitive data that it refuses to relinquish even when directed to by parents."[56]

### *Defendants Engaged in the Foregoing Acts Without Obtaining Verifiable Parental Consent*

115.    Defendants collected, used, or disclosed the personal information of Plaintiffs, including voiceprints, without notifying their parents and/or guardians. Defendants never obtained verifiable parental consent to collect, use, or disclose children's personal information.

---

[54] https://www.youtube.com/watch?v=mlraB-zflv8 (last accessed Aug. 2, 2019).
[55] EchoKidsPrivacy.com, Complaint, p.32. (last accessed Aug. 2, 2019).
[56] https://www.commondreams.org/news/2019/05/09/alexa-stop-spying-my-kids-ftc-complaint-charges-amazons-echo-dot-violates-child, (last accessed Aug. 2, 2019) ("We spent months analyzing the Echo Dot Kids and the devices myriad privacy policies and we still don't have a clear picture of what data is collected by Amazon and how has access to it. . . . If privacy experts can't make heads or tails of Amazon's privacy policy labyrinth, . . . how can a parent meaningfully consent to the collection of their children's data?" Angela Campbell, a CCFC board member and director of IPR's Communication and Technology Clinic.).

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

116.     Plaintiffs never knew that Defendants collected, disclosed, or used children's personal information because Defendants at all times failed to provide any of the required disclosures, never sought verifiable parental consent, and never provided a mechanism by which the Plaintiffs' parents could provide verifiable consent.

### *The Campaign Files a Complaint Against Amazon*

117.     In May of 2019, the Campaign filed a complaint against Defendants with the Federal Trade Commission ("FTC") for their unlawful and deceptive conduct in connection with their actions alleged herein.[57]

118.     The Campaign's Complaint alleges, *inter alia*, Defendants engaged in unlawful and deceptive practices by surreptitiously collecting and tracking children's personal information through Defendants' device.

119.     The Campaign further complains that Amazon unlawfully fails to disclose which Skills collect personal information from children and what type of information the Skills collect.

120.     While that case remains pending before the FTC, Plaintiffs now bring this case on behalf of the millions of consumers harmed by Defendants' unlawful conduct.

### *Fraudulent Concealment and Tolling*

121.     The applicable statutes of limitations are tolled by virtue of Defendants' knowing and active concealment of the facts alleged above. Plaintiffs and class members were ignorant of the information essential to the pursuit of these claims, without any fault or lack of diligence on their own part.

122.     At the time the action was filed, Defendants were under a duty to disclose the true character, quality, and nature of their activities to Plaintiffs and the Classes. Defendants are therefore estopped from relying on any statute of limitations.

123.     Defendants' fraudulent concealment is common to the Classes.

---

[57] *See* https://commercialfreechildhood.org/sites/default/files/devel-generate/ciw/echo_dot_complaint.pdf. (last accessed Aug. 2, 2019).

CLASS ACTION COMPLAINT
Case No.

-26-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CLASS ACTION ALLEGATIONS

124.    Plaintiffs seek class certification of the Classes and Subclasses set forth herein pursuant to Federal Rule of Civil Procedure 23.

125.    Plaintiffs bring this class action on behalf of themselves and all members of the following class:

**The National Class:**  All children under the age of 13 residing in the United States who used Alexa on the Amazon Echo Dot Kids Edition.

126.    Plaintiffs also seek class certification of claims for the common law privacy cause of action "Intrusion Upon Seclusion," on behalf of a multi-state class, with a class defined as follows:

**The Multi-state Class**: All children under the age of 13 residing in the States of Alabama, Arizona, California, Connecticut, Delaware, Florida, Georgia, Illinois, Kentucky, Louisiana, Massachusetts, Michigan, Minnesota, Mississippi, Nevada, New York, North Carolina, Ohio, Pennsylvania, Texas, Vermont, Virginia, and Wisconsin who used Alexa on the Amazon Echo Dot Kids Edition.

127.    Plaintiffs also seek certification of the following state subclasses:

**Alabama Subclass:**  All children under the age of 13 residing in the State of Alabama who used Alexa on the Amazon Echo Dot Kids Edition.

**Arizona Subclass:**  All children under the age of 13 residing in the State of Arizona who used Alexa on the Amazon Echo Dot Kids Edition.

**California Subclass:**  All children under the age of 13 residing in the State of California who used Alexa on the Amazon Echo Dot Kids Edition.

**Connecticut Subclass:**  All children under the age of 13 residing in the State of Connecticut who used Alexa on the Amazon Echo Dot Kids Edition.

**Delaware Subclass:**  All children under the age of 13 residing in the State of Delaware who used Alexa on the Amazon Echo Dot Kids Edition.

CLASS ACTION COMPLAINT
Case No.
-27-
IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

**Florida Subclass:** All children under the age of 13 residing in the State of Florida who used Alexa on the Amazon Echo Dot Kids Edition.

**Georgia Subclass:** All children under the age of 13 residing in the State of Georgia who used Alexa on the Amazon Echo Dot Kids Edition.

**Illinois Subclass:** All children under the age of 13 residing in the State of Illinois who used Alexa on the Amazon Echo Dot Kids Edition.

**Kentucky Subclass:** All children under the age of 13 residing in the State of Kentucky who used Alexa on the Amazon Echo Dot Kids Edition.

**Louisiana Subclass**: All children under the age of 13 residing in the State of Louisiana who used Alexa on the Amazon Echo Dot Kids Edition.

**Massachusetts Subclass:** All children under the age of 13 residing in the State of Massachusetts who used Alexa on the Amazon Echo Dot Kids Edition.

**Michigan Subclass:** All children under the age of 13 residing in the State of Michigan who used Alexa on the Amazon Echo Dot Kids Edition.

**Minnesota Subclass:** All children under the age of 13 residing in the State of Minnesota who used Alexa on the Amazon Echo Dot Kids Edition.

**Mississippi Subclass:** All children under the age of 13 residing in the State of Mississippi who used Alexa on the Amazon Echo Dot Kids Edition.

**Nevada Subclass:** All children under the age of 13 residing in the State of Nevada who used Alexa on the Amazon Echo Dot Kids Edition.

**New York Subclass:** All children under the age of 13 residing in the State of New York who used Alexa on the Amazon Echo Dot Kids Edition.

**North Carolina Subclass:** All children under the age of 13 residing in the State of North Carolina who used Alexa on the Amazon Echo Dot Kids Edition.

**Ohio Subclass:** All children under the age of 13 residing in the State of Ohio who used Alexa on the Amazon Echo Dot Kids Edition.

CLASS ACTION COMPLAINT
Case No.
-28-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

1
2

**Pennsylvania Subclass:**  All children under the age of 13 residing in the State of Pennsylvania who used Alexa on the Amazon Echo Dot Kids Edition.

3
4

**Texas Subclass:**  All children under the age of 13 residing in the State of Texas who used Alexa on the Amazon Echo Dot Kids Edition.

5
6

**Vermont Subclass:**  All children under the age of 13 residing in the State of Vermont who used Alexa on the Amazon Echo Dot Kids Edition.

7
8

**Virginia Subclass:**  All children under the age of 13 residing in the State of Virginia who used Alexa on the Amazon Echo Dot Kids Edition.

9
10

**Wisconsin Subclass:**  All children under the age of 13 residing in the State of Wisconsin who used Alexa on the Amazon Echo Dot Kids Edition.

11
12

128.    Plaintiffs reserve the right to modify or refine the Class or Subclass definitions based upon discovery of new information.

13
14
15
16
17
18
19
20

129.    Excluded from the Classes and Subclasses are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendants, Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendants or their parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Classes or Subclass; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

21

### *The Classes Satisfy the Rule 23 Requirements*

22
23
24
25

130.    <u>Ascertainability</u>. The proposed Classes and Subclasses are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class or Subclass. Further, the Classes and Subclass can be readily identified through records maintained by Defendants.

26

CLASS ACTION COMPLAINT
Case No.

-29-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

131.   <u>Numerosity</u> (Rule 23(a)(1)). The Classes and Subclasses are so numerous that joinder of individual members herein is impracticable. The exact number of Class or Subclass members, as herein identified and described, is not known, but sales figures indicate that Defendant has sold millions of devices across the U.S.

132.   <u>Commonality</u> (Rule 23(a)(2)). Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

a)   Whether Defendants engaged in the activities referenced in the above paragraphs;

b)   Whether Defendants provided disclosure of all the activities referenced in the above paragraphs, as required by federal and state laws;

c)   Whether Defendants directly notified parents of any of the activities referenced in the above paragraphs;

d)   Whether Defendants sought verifiable parental consent prior to engaging in any of the activities referenced in the above paragraphs;

e)   Whether Defendants provided a process or mechanism for parents to provide verifiable parental consent prior to engaging in any of the activities referenced in the above paragraphs;

f)   Whether Defendants received verifiable parental consent prior to engaging in any of the activities referenced in the above paragraphs;

g)   Whether Defendants otherwise collected and retained personally identifying information in a legally permissible fashion;

h)   Whether Defendants' acts and practices complained of herein violate the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*;

i)   Whether Defendants' acts and practices complained of herein amount to acts of intrusion upon seclusion under the laws of Alabama, Arizona, California, Connecticut, Delaware, Florida, Georgia, Illinois, Kentucky, Louisiana, Massachusetts, Michigan,

CLASS ACTION COMPLAINT
Case No.
-30-
IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
TEL.: (206) 625-1326

Minnesota, Mississippi, Nevada, New York, North Carolina, Ohio, Pennsylvania, Texas, Vermont, Virginia, and Wisconsin;

j) Whether Defendants' acts and practices complained of herein violate the State consumer protection laws invoked herein;

k) Whether Defendants' acts and practices complained of herein violate Subclass members' California Constitutional Right to Privacy;

l) Whether Defendants' acts and practices complained of herein violate Illinois' Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.*

m) Whether members of the Classes and Subclasses have sustained damages, and, if so, in what amount; and

n) What is the appropriate injunctive relief to ensure Defendants no longer illegally collect children's personal information, including, voiceprints.

133.   <u>Typicality</u> (Rule 23(a)(3)). Plaintiffs' claims are typical of the claims of members of the proposed Classes and Subclasses because, among other things, Plaintiffs and members of the Classes and Subclasses sustained similar injuries as a result of Defendants' uniform wrongful conduct and their legal claims all arise from the same events and wrongful conduct by Defendants.

134.   <u>Adequacy</u> (Rule 23(a)(4)). Plaintiffs will fairly and adequately protect the interests of the proposed Classes and Subclasses. Plaintiffs' interests do not conflict with the interests of the members of the Classes and Subclasses and Plaintiffs have retained counsel experienced in complex class action and data privacy litigation to prosecute this case on behalf of the Classes and Subclasses.

135.   <u>Predominance & Superiority</u> (Rule 23(b)(3)). In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual Class and Subclass members, and a class action is superior to individual litigation and all other available methods for the fair and efficient adjudication of this controversy. The amount of damages available to individual Plaintiffs is insufficient to make litigation addressing

CLASS ACTION COMPLAINT
Case No.
-31-
IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

Defendants' conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

136.    <u>Final Declaratory or Injunctive Relief</u> (Rule 23(b)(2)). Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(b)(2). Defendants have acted or refused to act on grounds that apply generally to the proposed Classes and Subclasses, making final declaratory or injunctive relief appropriate with respect to the proposed Classes and Subclasses as a whole.

137.    <u>Particular Issues</u> (Rule 23(c)(4)). Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). Their claims consist of particular issues that are common to all Class and Subclass members and are capable of class-wide resolution that will significantly advance the litigation.

**CAUSES OF ACTION**

**<u>COUNT 1</u>**

***VIOLATION OF THE WIRETAP ACT, 18 U.S.C. § 2510 et seq.***

***(Brought on Behalf of the National Class)***

138.    Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

139.    The Federal Wiretap Act, 18 U.S.C. § 2510 et seq., prohibits the interception of any wire, oral, or electronic communications. The statute confers a civil cause of action on "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. § 2520(a).

140.    "Electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio,

CLASS ACTION COMPLAINT
Case No.
-32-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce…" 18 U.S.C. § 2510(12).

141.    "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

142.    "Contents" is defined as "includ[ing] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

143.    "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6).

144.    Plaintiffs and Class members are persons as defined under § 2510(6) of the Act.

145.    Amazon's Echo Dot Kids Edition, including its use of Alexa and Skills, is a device for purposes of the Wiretap Act because it is software used to intercept electronic communication.

146.    Amazon's Echo Dot Kids Edition, including its use of Alexa and Skills, through its design, authorship, programming, and/or knowing and intentional installation has intentionally intercepted, endeavored to intercept, and/or procured others to intercept or endeavor to intercept, electronic communications as described herein, in violation of 18 U.S.C. § 2511(1)(a). This interception was acquired during transmission in real-time as described above.

147.    The contents intercepted include information concerning the substance, purport, or meaning of that communication, including, but not limited to, real-time voice recordings, MAC (media access control) addresses of devices, serial numbers, and IP addresses, which are all transmitted to the Amazon Cloud and stored in association with the child's profile and the accumulating cache of audio voice recordings.

148.    Plaintiffs' and Class members' electronic communications were intercepted during transmission, simultaneous with the communications' arrival, and/or within a second of the communications' arrival without their consent and for the unlawful and/or wrongful purpose of monetizing their private information, including by using their private information to create targeted advertisements

CLASS ACTION COMPLAINT
Case No.
-33-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

for profit, without Class members' consent, and for tortious purposes and for the purpose of committing unfair business practices.

149.    As a result, Plaintiffs and Class members have suffered harm and injury, including due to the interception and transmission of private and personal, confidential, and sensitive communications, content, and data.

150.    Plaintiffs and Class members have been damaged by the interception or disclosure of their communications in violation of the Wiretap Act, as described herein, and are thus entitled to preliminary, equitable, or declaratory relief; statutory and punitive damages; and reasonable attorney's fees and litigations costs reasonably incurred. 18 U.S.C. § 2520(b).

## COUNT 2

### *INTRUSION UPON SECLUSION*

### *(Brought on Behalf of the Multi-state Class)*

151.    Plaintiffs repeat and re-allege each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

152.    Plaintiffs and Class members have reasonable expectations of privacy in their electronic devices and their online behavior, generally.  Plaintiffs' and Class members' private affairs include their behavior on their electronic devices as well as any other behavior that may be monitored by the surreptitious collection and tracking of Plaintiffs' personal information performed by Defendants' device.

153.    The reasonableness of such expectations of privacy is supported by Defendants' unique position to monitor Plaintiffs' and Class Members' behavior through their access to Plaintiffs' and Class members' private electronic devices.  It is further supported by the surreptitious, highly-technical, and non-intuitive nature of Defendants' tracking.

154.    Defendants intentionally intruded on and into Plaintiffs' and Class members' solitude, seclusion, or private affairs by intentionally designing the device to surreptitiously obtain, improperly gain knowledge of, review, and/or retain Plaintiffs' and Class members' activities through the technologies and activities described herein.

CLASS ACTION COMPLAINT
Case No.

-34-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

155.    These intrusions are highly offensive to a reasonable person. This is evidenced by, *inter alia*, the legislation enacted by Congress, rules promulgated, the complaint filed against Defendants with the FTC, and countless studies, op-eds, and articles decrying the online tracking of children. Further, the extent of the intrusion cannot be fully known, as the nature of privacy invasion involves sharing Plaintiffs' and Class members' personal information with potentially countless third-parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity. Also supporting the highly offensive nature of Defendants' conduct is the fact that Defendants' principal goal was to surreptitiously monitor Plaintiffs and Class members-in one of the most private spaces available to an individual in modern life-and to allow third-parties to do the same.

156.    Plaintiffs and Class members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

157.    Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and Class members.

158.    As a result of Defendants' actions, Plaintiffs and Class members seek injunctive relief in the form of Defendants' cessation of tracking practices in violation of federal and state law and destruction of all personal data obtained in violation thereof.

159.    As a result of Defendants' actions, Plaintiffs and Class members seek nominal and punitive damages in an amount to be determined at trial. Plaintiffs and Class members seek punitive damages because Defendants' actions—which were malicious, oppressive, willful—were calculated to injure Plaintiffs and made in conscious disregard of Plaintiffs' rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

## COUNT 3

### *VIOLATION OF ALABAMA CONSUMER PROTECTION ACT*

### *(Brought on Behalf of the Alabama Subclass)*

160.    Plaintiffs individually and on behalf of the Alabama Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

CLASS ACTION COMPLAINT
Case No.
-35-
IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
TEL.: (206) 625-1326

1      161.    Plaintiffs and the other Alabama Subclass members are "consumers" as defined by

2  Ala. Code § 8-19-3(2).

3      162.    Defendants received notice pursuant to Ala. Code § 8-19-10(e) concerning their

4  wrongful conduct as alleged herein by Plaintiffs and Alabama Subclass members.

5      163.    Defendants advertised, offered, or sold goods or services in Alabama, and engaged

6  in trade or commerce directly or indirectly affecting the people of Alabama.

7      164.    Defendants engaged in deceptive acts and practices in the conduct of trade or

8  commerce, in violation of the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-5, by,

9  among other things, failing to obtain consent from parent or guardian before collecting and/or

10  using personal information from children.

11      165.    Plaintiffs and Alabama Subclass members were injured and damaged in that they

12  suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's

13  personal information, for Defendants' own benefit, without the Class members' knowledge or

verifiable parental consent.

     166.    Defendants' deceptive acts and practices caused substantial injury to Plaintiffs and

Alabama Subclass members, which they could not reasonably avoid, and which outweighed any

benefits to consumers or to competition.

     167.    Plaintiffs and Alabama Subclass members seek all monetary and non-monetary

relief allowed by law, including the greater of (a) actual damages or (b) statutory damages of $100

per person; treble damages; injunctive relief; attorneys' fees, costs, and any other relief that is just

and proper.

## COUNT 4

### *VIOLATION OF ARIZONA CONSUMER FRAUD ACT*

### *(Brought on Behalf of the Arizona Subclass)*

     168.    Plaintiffs individually and on behalf of the Arizona Subclass, repeat and re-allege

all previously alleged paragraphs, as if fully alleged herein.

CLASS ACTION COMPLAINT
Case No.
-36-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

169.    Defendants advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

170.    Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of "merchandise" (as defined in Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521(5)) in violation of Ariz. Rev. Stat. § 44-1522(A), by, among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children.

171.    Plaintiffs and Arizona Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

172.    Plaintiffs Arizona Subclass members seek all monetary and non-monetary relief allowed by law, including compensatory damages; disgorgement; punitive damages; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT 5

### *VIOLATION OF CALIFORNIA CONSTITUTIONAL RIGHT TO PRIVACY*
### *(Brought on Behalf of the California Subclass)*

173.    Plaintiffs individually and on behalf of the California Subclass repeat and re-allege each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

174.    Plaintiffs and California Subclass members have reasonable expectations of privacy in their electronic devices and their online behavior, generally.

175.    The reasonableness of such expectations of privacy is supported by Defendants' unique position to monitor Plaintiffs' and Class Members' behavior through their access to Plaintiffs' and Class members' private electronic devices. It is further supported by the surreptitious, highly-technical, and non-intuitive nature of Defendants' tracking.

CLASS ACTION COMPLAINT
Case No.
-37-
IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

176.    Defendants intentionally intruded on and into Plaintiffs' and Class members' solitude, seclusion, or private affairs by intentionally designing the device to surreptitiously obtain, improperly gain knowledge of, review, and/or retain Plaintiffs' and Class members' activities through the technologies and activities described herein.

177.    These intrusions are highly offensive to a reasonable person. This is evidenced by, *inter alia*, the legislation enacted by Congress, rules promulgated, the complaint filed against Defendants with the FTC, and countless studies, op-eds, and articles decrying the online tracking of children. Further, the extent of the intrusion cannot be fully known, as the nature of privacy invasion involves sharing Plaintiffs' and California Subclass members' personal information with potentially countless third-parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity. Also supporting the highly offensive nature of Defendants' conduct is the fact that Defendants' principal goal was to surreptitiously monitor Plaintiffs and California Subclass members in one of the most private spaces available to an individual in modern life-and to allow third-parties to do the same.

178.    Plaintiffs and California Subclass members were harmed by the intrusion into their private affairs, as detailed throughout this Complaint.

179.    Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and California Subclass members.

180.    As a result of Defendants' actions, Plaintiffs and California Subclass members seek injunctive relief in the form of destruction of all personal data obtained.

181.    As a result of Defendants' actions, Plaintiffs and California Subclass members seek nominal and punitive damages in an amount to be determined at trial. Plaintiffs and California Subclass members seek punitive damages because Defendants' actions—which were malicious, oppressive, willful—were calculated to injure Plaintiffs and made in conscious disregard of Plaintiffs' rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

CLASS ACTION COMPLAINT
Case No.

-38-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

**COUNT 6**

***VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT***

***(Brought on Behalf of the California Subclass)***

182.     Plaintiffs repeat and re-allege each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

183.     Defendants' products and services are "goods" and "services" as defined by Cal. Civ. Code § 1761(a) and (b).

184.     Defendants advertised, offered, or sold goods or services in California and engaged in trade or commerce directly or indirectly affecting the people of California.

185.     Defendants engaged in acts of deception and other policies, acts, and practices were designed to, and did, induce the use of the device for personal, family, or household purposes by Plaintiffs and Class Members, and violated and continue to violate the following sections of the CLRA:

   § 1770(a)(2): Misrepresenting the source, sponsorship, approval, or certification of goods or services.

   § 1770(a)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

   § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

   § 1770(a)(14): Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.

186.     Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

187.     Contemporaneously with the filing of this Complaint, and pursuant to the provisions of Cal. Civ. Code. §1782(a), Plaintiffs provided a letter to Defendants with notice of their alleged violations of the CLRA, demanding that Defendants correct such violations, and providing them with the opportunity to correct their business practices.  Pursuant to California

CLASS ACTION COMPLAINT
Case No.

-39-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

1    Civil Code § 1780, Plaintiffs seek injunctive relief, their reasonable attorney fees and costs, and

2    any other relief that the Court deems proper.

3          188.    After 30 days have passed, and in the event Defendants fail to cure, Plaintiffs will

4    amend (or seek leave to amend) their complaint to add claims for monetary relief, including

5    restitution and actual damages under the Consumers Legal Remedies Act.

6                                          **COUNT 7**

7                  ***VIOLATION OF CONNECTICUT TRADE PRACTICES ACT***

8                   ***(Brought on Behalf of the Connecticut Subclass)***

9          189.    Plaintiffs individually and on behalf of the Connecticut Subclass, repeat and re-

10   allege all previously alleged paragraphs, as if fully alleged herein.

11         190.    Defendants engaged in "trade" or "commerce" as those terms are defined by Conn.

12   Gen. Stat. § 42-110a(4).

13         191.    At the time of filing this Complaint, Plaintiffs sent notice to the Attorney General

14   and Commissioner of Consumer Protection pursuant to Conn. Gen. Stat. § 42-110g(c).  Plaintiffs

15   will provide a file-stamped copy of the Complaint to the Attorney General and Commissioner of

16   Consumer Protection.

17         192.    Defendants advertised, offered, or sold goods or services in Connecticut, and

18   engaged in trade or commerce directly or indirectly affecting the people of Connecticut.

19         193.    Defendants engaged in deceptive acts and practices and unfair acts and practices in

20   the conduct of trade or commerce, in violation of Conn. Gen. Stat. § 42-110b, by, among other

21   things, failing to obtain consent from parent or guardian before collecting and/or using personal

22   information from children.

23         194.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Connecticut

24   Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy

25   through Defendants' acquisition and use of children's personal information, for Defendants' own

26   benefit, without the Class members' knowledge or verifiable parental consent.

CLASS ACTION COMPLAINT
Case No.
                                          -40-
                                                              IDE LAW OFFICE
                                                       7900 SE 28TH STREET, SUITE 500
                                                        MERCER ISLAND, WA  98040
                                                           TEL.: (206) 625-1326

195.    Defendants' deceptive acts and practices caused substantial, ascertainable injury to Plaintiffs and Connecticut Subclass members, which they could not reasonably avoid, and which outweighed any benefits to consumers or to competition.

196.    Defendants' violations of Connecticut law were done with reckless indifference to Plaintiffs' and Connecticut Subclass members' children or was with an intentional or wanton violation of those rights.

197.    Plaintiffs and Connecticut Subclass members request damages in the amount to be determined at trial, including statutory and common law damages, attorneys' fees, and punitive damages.

## COUNT 8

### VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT AND DECEPTIVE TRADE PRACTICES ACT

#### (Brought on Behalf of the Delaware Subclass)

198.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

199.    This count is brought on behalf of the Delaware Subclass members against all Defendants.

200.    The Delaware Consumer Fraud Act ("Delaware CFA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 Del. Code § 2513(a).

201.    In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Delaware CFA as detailed above. Specifically, by, among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children, Defendants engaged in one or more of the following unlawful acts or

CLASS ACTION COMPLAINT
Case No.

-41-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

practices prohibited by 6 Del. Code § 2513(a): using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission.

202.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

203.   The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Delaware Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

204.   As a result of Defendants' deceptive acts and practices, Plaintiffs and Delaware Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

205.   Plaintiffs and Delaware Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

206.   The Delaware Subclass seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive or treble damages, and any other just and proper relief available under the Delaware CFA and DTPA (6 Del. Code §§ 2525 and 2533). *See, e.g.*, *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1983).

## COUNT 9

### *VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT*
### *(Brought on Behalf of the Florida Subclass)*

207.   Plaintiffs individually and on behalf of the Florida Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

208.   Plaintiffs and Florida Subclass members are "consumers" as defined by Fla. Stat. § 501.203.

CLASS ACTION COMPLAINT
Case No.
-42-
IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

209.   Defendants advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly or indirectly affecting the people of Florida.

210.   Defendants engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1), by, among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children.

211.   Defendants' false, misleading and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

212.   As a result of Defendants' deceptive acts and practices, Plaintiffs and Florida Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without Class members' knowledge or verifiable parental consent.

213.   Plaintiffs and Florida Subclass members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages under Fla. Stat. § 501.21; declaratory and injunctive relief; reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

## COUNT 10

### *VIOLATION OF GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT*

### *(Brought on Behalf of the Georgia Subclass)*

214.   Plaintiffs individually and on behalf of the Georgia Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

215.   Plaintiffs and Georgia Subclass members are "persons" within the meaning of § 10-1-371(5) of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA").

216.   Defendants received notice pursuant to Ga. Code Ann. § 10-1-399 concerning its wrongful conduct as alleged herein by Plaintiffs and Georgia Subclass members.

CLASS ACTION COMPLAINT
Case No.
-43-
IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

217.    Defendants engaged in deceptive trade practices in the conduct of its business, in violation of Ga. Code Ann. § 10-1-372(a)(5), by, among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children.

218.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Georgia Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

219.    Plaintiffs and Georgia Subclass members seek all relief allowed by law, including injunctive relief, and reasonable attorneys' fees and costs, under Ga. Code Ann. § 10-1-373.

## COUNT 11

### *VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT*

### *(Brought on Behalf of the Illinois Subclass)*

220.    Plaintiffs individually and on behalf of the Illinois Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

221.    Defendants engaged in deceptive trade practices in the conduct of their business, in violation of 815 Ill. Comp. Stat. § 510/2(a), by, among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children.

222.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

223.    The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury to Plaintiffs and Illinois Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

224.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Illinois Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy

CLASS ACTION COMPLAINT
Case No.
-44-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without Class members' knowledge or verifiable parental consent.

225.   Plaintiffs and Illinois Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

## COUNT 12

### *VIOLATION OF THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT ("BIPA")*
### *(Brought on Behalf of the Illinois Subclass)*

226.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

227.   In 2008, Illinois enacted BIPA due to the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276.

228.   Under BIPA, "Biometric identifier" means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. Biometric identifiers do not include writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color. Biometric identifiers do not include donated organs, tissues, or parts as defined in the Illinois Anatomical Gift Act or blood or serum stored on behalf of recipients or potential recipients of living or cadaveric transplants and obtained or stored by a federally designated organ procurement agency. Biometric identifiers do not include biological materials regulated under the Genetic Information Privacy Act. Biometric identifiers do not include information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996. Biometric identifiers do not include an X-ray, roentgen process, computed tomography, MRI, PET scan, mammography, or other image or film of the human anatomy used to diagnose, prognose, or treat an illness or other medical condition or to further validate scientific testing or screening.

CLASS ACTION COMPLAINT
Case No.
-45-
IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

229.    "Biometric information" means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.

230.    BIPA makes it unlawful for any private entity to among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information…." 740 ILCS 14/15(b).

231.    BIPA also prohibits private entities from disclosing a person's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

232.    BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, these companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the customer); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

233.    Defendants are registered to do business in Illinois and thus qualify as "private entities" under BIPA. *See* 740 ILCS 14/10.

234.    Plaintiffs and Illinois Subclass members are individuals who had their voiceprint(s), i.e., "biometric identifiers," collected and stored by Defendant. *See* 740 ILCS 14/10.

235.    Plaintiffs and Illinois Subclass members are individuals who had their "biometric information" collected and stored by Defendant in the form of digitally encrypted code, derived

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

from Plaintiff's and Illinois Subclass members' children's voiceprints, that uniquely identifies the individual to whom the voiceprint belongs.

236.    Defendants systematically collected, used, and stored Plaintiffs' and Illinois Subclass member's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3), uniformly invading Plaintiff's and Illinois Subclass member's statutorily protected right to privacy in their biometrics.

237.    On information and belief, Defendants disclosed Plaintiffs' and Illinois Subclass members' biometric identifiers and biometric information to third-parties.

238.    Defendants failed to properly inform Plaintiffs and the Illinois Subclass in writing that their biometric identifiers and/or biometric information were being collected, stored, or otherwise obtained, nor did Defendants inform Plaintiffs or the Illinois Subclass members in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information was being collected, stored, and used, as required by 740 ILCS 14/15(b)(1)-(2).

239.    In addition, Defendants do not publicly provide a retention schedule or guidelines for permanently destroying the biometric identifiers and/or biometric information of Plaintiffs or Illinois Subclass members, as required by BIPA. *See* 740 ILCS 14/15(a). The failure by Defendants to provide Plaintiffs and Illinois Subclass members with a retention schedule or guidelines for permanently destroying Plaintiffs' or the Illinois Subclass members' biometric identifiers or biometric information constitutes an independent violation of the statute.

240.    Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiffs' and the Illinois Subclass member's biometric data and has not and will not destroy Plaintiffs' or the Illinois Subclass' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of personnel's last interactions with the company.

241.    These violations have raised a material risk that Plaintiffs' and Illinois Subclass members' biometric data will be unlawfully accessed by third parties.

CLASS ACTION COMPLAINT
Case No.
-47-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

242.    Each instance in which Defendants collected, stored, used, or otherwise obtained Plaintiffs' and Illinois Subclass members' biometric identifiers and biometric information as described herein constitutes a separate violation of the statute and of the right of Plaintiffs and Illinois Subclass members to keep private these biometric identifiers and biometric information, as set forth in BIPA, 740 ILCS 14/1, *et seq.*

243.    On behalf of themselves and the Illinois Subclass members, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and Illinois Subclass members by requiring Defendants to comply with BIPA's requirements, including BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein, and for the provision of the requisite written disclosure to affected persons; (2) statutory damages of $5,000.00 for each and every intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000.00 for each and every violation pursuant to 740 ILCS 14/20(1) if the Court finds that Defendant's violations were negligent; and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## COUNT 13

### *VIOLATION OF KENTUCKY CONSUMER PROTECTION ACT*

### *(Brought on Behalf of the Kentucky Subclass)*

244.    Plaintiffs individually and on behalf of the Kentucky Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

245.    Defendants advertised, offered, or sold goods or services in Kentucky and engaged in trade or commerce directly or indirectly affecting the people of Kentucky, as defined by Ky. Rev. Stat. § 367.110(2).

246.    Defendants engaged in unfair, false, misleading, deceptive, and unconscionable acts or practices, in violation of Ky. Rev. Stat. § 367.170 by, among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children.

CLASS ACTION COMPLAINT
Case No.
-48-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

247.    Plaintiffs' and Kentucky Subclass members' parents and/or guardians purchased goods or services for personal, family, or household purposes and suffered ascertainable losses of money or property as a result of Defendants' unlawful acts and practices.

248.    The above unlawful acts and practices by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Kentucky Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

249.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Kentucky Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without Class members' knowledge or verifiable parental consent.

250.    Plaintiffs and Kentucky Subclass members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution or other equitable relief, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT 14

### VIOLATION OF LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
#### (Brought on Behalf of the Louisiana Subclass)

251.    Plaintiffs individually and on behalf of the Louisiana Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

252.    Plaintiffs and Louisiana Subclass members are "consumers" within the meaning of La. Rev. Stat. Ann. § 51:1402(1).

253.    Defendants engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. Ann. § 51:1402(10).

254.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. § 51:1405(A).  Unfair acts are those that offend established public

CLASS ACTION COMPLAINT
Case No.
-49-
IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

policy, while deceptive acts are practices that amount to fraud, deceit, or misrepresentation. Defendants engaged in unfair or deceptive acts under La. Rev. Stat. Ann. § 51:1405(A), by, among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children.

255.    Defendants' unfair and deceptive acts and practices were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Louisiana Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

256.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Louisiana Subclass members were injured and damaged in that they suffered a loss privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

257.    Plaintiffs and Louisiana Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages; treble damages for Defendants knowing violations of the Louisiana CPL; declaratory relief; attorneys' fees; and any other relief that is just and proper.

## COUNT 15

### VIOLATION OF DECEPTIVE ACTS OR PRACTICES
### PROHIBITED BY MASSACHUSETTS LAW

#### (Brought on Behalf of the Massachusetts Subclass)

258.    Plaintiffs individually and on behalf of the Massachusetts Subclass repeat and re-allege each preceding paragraph as though fully set forth herein.

259.    Defendants, Plaintiffs, and Massachusetts Subclass members are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

260.    Defendants engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

CLASS ACTION COMPLAINT
Case No.

-50-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

261.    Massachusetts law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.

262.    Defendants' false, misleading and deceptive statements and representations of fact complained of herein were and are directed to consumers.

263.    Defendants' false, misleading and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

264.    Defendants' false, misleading and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

265.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Massachusetts Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without Class members' knowledge or verifiable parental consent.

266.    Pursuant to Mass. Gen. Laws ch. 93A, § 9, Plaintiffs and Massachusetts Subclass members seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Massachusetts Subclass member.

### COUNT 16

#### *VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT,*

#### *(Brought on Behalf of the Michigan Subclass)*

267.    Plaintiffs individually and on behalf of the Michigan Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

268.    Plaintiffs and Michigan Subclass members are "persons" as defined by Mich. Comp. Laws Ann. § 445.902(d).

269.    Defendants offered and sold goods in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by Mich. Comp. Laws Ann. § 445.902(g).

CLASS ACTION COMPLAINT
Case No.

-51-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

270.     Defendants engaged in unfair, unconscionable, and deceptive practices in the conduct of trade and commerce, in violation of Mich. Comp. Laws Ann. § 445.903(1) by (a) representing that their goods and services have characteristics, uses, and benefits that they do not have, in violation of Mich. Comp. Laws Ann. § 445.903(1)(c); (b) representing that their goods and services are of a particular standard or quality if they are of another in violation of Mich. Comp. Laws Ann. § 445.903(1)(e); (c) making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, in violation of Mich. Comp. Laws Ann. § 445.903(1)(bb); and (d) failing to reveal facts that are material to the transaction in light of representations of fact made in a positive matter, in violation of Mich. Comp. Laws Ann. § 445.903(1)(cc).

271.     As a result of Defendants' deceptive acts and practices, Plaintiffs and Michigan Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without Class members' knowledge or verifiable parental consent.

272.     Plaintiffs and Michigan Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, injunctive relief, and any other relief that the Court deems just and proper.

## COUNT 17

### *VIOLATION OF MINNESOTA CONSUMER FRAUD ACT,*

### *(Brought on Behalf of the Minnesota Subclass)*

273.     Plaintiffs individually and on behalf of the Minnesota Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

274.     Plaintiffs and Minnesota Subclass members are each a "person" as defined by Minn. Stat. § 325F.68(3).

275.     Defendants' goods, services, commodities, and intangibles (specifically, their device) is "merchandise" as defined by Minn. Stat. § 325F.68(2).

276.     Defendants engaged in "sales" as defined by Minn. Stat. § 325F.68(4).

CLASS ACTION COMPLAINT
Case No.
-52-
IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

277.    Defendants engaged in fraud, false pretense, false promise, misrepresentation, misleading statements, and deceptive practices in connection with the sale of merchandise, in violation of Minn. Stat. § 325F.69(1), as described herein, and Defendants violated § 445.903(1), by, among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children.

278.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

279.    Defendants intended to mislead Plaintiffs and Minnesota Subclass members and induce them to rely on their misrepresentations and omissions.

280.    Defendants' fraudulent, misleading, and deceptive practices affected the public interest, including millions of Minnesotans who purchased and/or used the device.

281.    As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiffs and Minnesota Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing and using the device.

282.    Plaintiffs and Minnesota Subclass members seek all monetary and non-monetary relief allowed by law, including damages, injunctive or other equitable relief, and attorneys' fees, disbursements, and costs.

## COUNT 18

### *VIOLATION OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT,*
### *(Brought on Behalf of the Minnesota Subclass)*

283.    Plaintiffs individually and on behalf of the Minnesota Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

284.    By engaging in deceptive trade practices in the course of their business and vocation, directly or indirectly affecting the people of Minnesota, Defendants violated Minn. Stat. § 325D.44, including the following provisions: representing that their goods and services had characteristics, uses, and benefits that they did not have, in violation of Minn. Stat. § 325D.44(1)

CLASS ACTION COMPLAINT
Case No.
-53-
IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

and (5); representing that their goods and services are of a particular standard or quality when they are of another, in violation of Minn. Stat. § 325D.44(1) and (7); and engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of Minn. Stat. § 325D.44(1) and (13).

285.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Minnesota Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without Class members' knowledge or verifiable parental consent.

286.    Plaintiffs and Minnesota Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief and attorneys' fees and costs.

<u>COUNT 19</u>

*VIOLATION OF MISSISSIPPI CONSUMER PROTECTION ACT,*

*(Brought on Behalf of the Mississippi Subclass)*

287.    Plaintiffs individually and on behalf of the Mississippi Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

288.    Defendants advertised, offered, or sold goods or services in Mississippi and engaged in trade or commerce directly or indirectly affecting the people of Mississippi, as defined by Miss. Code Ann. § 75-24-3, by, among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children.

289.    Defendants' false, misleading and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

290.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Mississippi Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

CLASS ACTION COMPLAINT
Case No.
-54-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

291.    Defendants' violations present a continuing risk to Plaintiffs and Mississippi Subclass members as well as to the general public as, *inter alia*, their omissions and misrepresentations have not been corrected.

292.    Plaintiffs and Mississippi Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, restitution and other relief under Miss. Code Ann. § 75-24-11, injunctive relief, punitive damages, and reasonable attorneys' fees and costs.

## COUNT 20

### *VIOLATION OF NEVADA DECEPTIVE TRADE PRACTICES ACT*

### *(Brought on Behalf of the Nevada Subclass)*

293.    Plaintiffs individually and on behalf of the Nevada Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

294.    Defendants advertised, offered, or sold goods or services in Nevada and engaged in trade or commerce directly or indirectly affecting the people of Nevada.

295.    Defendants engaged in deceptive trade practices in the course of their business or occupation, in violation of Nev. Rev. Stat. §§ 598.0915 and 598.0923 by knowingly making a false representation as to the characteristics, uses, and benefits of goods or services for sale in violation of Nev. Rev. Stat. § 598.0915(5); representing that goods or services for sale are of a particular standard, quality, or grade when Defendants knew or should have known that they are of another standard, quality, or grade in violation of Nev. Rev. Stat. § 598.0915(7); advertising goods or services with intent not to sell them as advertised in violation of Nev. Rev. Stat § 598.0915(9); failing to disclose a material fact in connection with the sale of goods or services in violation of Nev. Rev. Stat. § 598.0923(A)(2); and violating state and federal statutes or regulations relating to the sale of goods or services in violation of Nev. Rev. Stat. § 598.0923(A)(3). Defendants violated Nev. Rev. Stat. §§ 598.0915 and 598.0923, by, among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children.

296.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Nevada Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy

CLASS ACTION COMPLAINT
Case No.
-55-
IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

1  through Defendants' acquisition and use of children's personal information, for Defendants' own

2  benefit, without the Class members' knowledge or verifiable parental consent.

3  297.   Defendants' representations and omissions were material because they were likely

4  to deceive reasonable consumers.

5  298.   Defendants acted intentionally, knowingly, and maliciously to violate Nevada's

6  Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs' and Nevada Subclass

7  members' rights.

8  299.   As a direct and proximate result of Defendants' deceptive acts and practices,

9  Plaintiffs and Nevada Subclass members have suffered and will continue to suffer injury,

10  ascertainable losses of money or property, and monetary and non-monetary damages, including

11  from not receiving the benefit of their bargain in using the device they purchased from Defendants.

12  300.   Plaintiffs and Nevada Subclass members seek all monetary and non-monetary relief

13  allowed by law, including damages, punitive damages, and attorneys' fees and costs.

## COUNT 21

### *VIOLATION OF NEW YORK GENERAL BUSINESS LAW*

#### *(Brought on Behalf of the New York Subclass)*

16  301.   Plaintiffs individually and on behalf of the New York Subclass repeat and re-allege

17  each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

18  302.   Plaintiffs and Class members are "persons" within the meaning of New York

19  General Business Law § 349(h).

20  303.   Defendants are a "person," "firm," "corporation," or "association" within the

21  meaning of N.Y. Gen. Bus. Law § 349.

22  304.   Section 349 makes unlawful "[d]eceptive acts or practices in the conduct of any

23  business, trade or commerce."

24  305.   Defendants' conduct constitutes "deceptive acts or practices" within the meaning

25  of N.Y. Gen. Bus. Law § 349.  Defendants violated N.Y. Gen. Bus. Law § 349, by, among other

26

CLASS ACTION COMPLAINT
Case No.
-56-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children.

306.   Defendants' conduct occurred in the conduct of trade or commerce, and was directed at consumers.

307.   As a result of Defendants' deceptive acts and practices, Plaintiffs and New York Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

308.   Because Defendants' willful and knowing conduct caused injury to Plaintiffs and New York Subclass members, they seek recovery of actual damages or $50 per person, whichever is greater, discretionary treble damages up to $1,000, punitive damages, reasonable attorneys' fees and costs, an order enjoining Defendants' deceptive conduct, and any other just and proper relief available under N.Y. Gen. Bus. Law § 349.  Plaintiffs and New York Subclass members seek punitive damages because Defendants' actions - which were malicious, oppressive, willful - were calculated to injure Plaintiffs and class members and made in conscious disregard of their rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

## COUNT 22

### *VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT*

### *(Brought on Behalf of the North Carolina Subclass)*

309.   Plaintiffs individually and on behalf of the North Carolina Subclass repeat and re-allege each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

310.   At all times relevant herein, Defendants were engaged in commerce in the State of North Carolina.

311.   The conduct of Defendants as set forth herein is unethical, oppressive, unscrupulous, and substantially injurious to the consumers of North Carolina; and has the capacity and tendency to deceive the average consumer.

CLASS ACTION COMPLAINT
Case No.
-57-
IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

312.    Defendants' false, misleading and deceptive statements and representations of fact were and are directed to consumers.

313.    Defendants' false, misleading and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

314.    Defendants' false, misleading and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

315.    Defendants violated N.C. Gen. Stat. §§ 75-1.1, *et seq.,* by, among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children.

316.    As a result of Defendants' deceptive acts and practices, Plaintiffs and North Carolina Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

317.    Plaintiffs and North Carolina Subclass members suffered actual injury as a result of Defendants' unfair actions. Plaintiffs and North Carolina Subclass Members seek all monetary and non-monetary relief allowed by law, including actual damages, restitution, injunctive relief, punitive damages, and reasonable attorneys' fees and costs.

318.    Defendants' actions were in or affecting commerce and constitute unfair and deceptive trade practices, which are proscribed by Chapter 75 of the North Carolina General Statutes.

319.    Plaintiffs and North Carolina Subclass members have been damaged and are entitled to recover treble damages and attorneys' fees incurred in this action

## COUNT 23

### *VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT*

### *(Brought on Behalf of the Ohio Subclass)*

320.    Plaintiffs individually and on behalf of the Ohio Subclass Members, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

CLASS ACTION COMPLAINT
Case No.
-58-
IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

321.    Plaintiffs and Ohio Subclass members are "persons," as defined by Ohio Rev. Code Ann. § 1345.01(B).

322.    Defendants are "suppliers" engaged in "consumer transactions," as defined by Ohio Rev. Code Ann. § 1345.01(A) and (C).

323.    Defendants advertised, offered, or sold goods or services in Ohio and engaged in trade or commerce directly or indirectly affecting the people of Ohio.

324.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Ohio Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

325.    Plaintiffs and Ohio Subclass members seek all monetary and non-monetary relief allowed by law, including declaratory and injunctive relief, the greater of actual and treble damages or statutory damages, attorneys' fees and costs, and any other appropriate relief.

## COUNT 24

### VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

#### (Brought on Behalf of the Pennsylvania Subclass)

326.    Plaintiffs individually and on behalf of the Pennsylvania Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

327.    Defendants are "persons" as meant by 73 Pa. Cons. Stat. § 201-2(2).

328.    Plaintiffs and Pennsylvania Subclass members purchased goods and services in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or household purposes.

329.    Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of their trade and commerce in violation of 73 Pa. Cons. Stat. Ann. § 201-3, including the following: representing that their goods and services have characteristics, uses, benefits, and qualities that they do not have (73 Pa. Stat. Ann. § 201-2(4)(v)); representing

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

that their goods and services are of a particular standard or quality if they are another (73 Pa. Stat. Ann. § 201-2(4)(vii)); and advertising their goods and services with intent not to sell them as advertised (73 Pa. Stat. Ann. § 201-2(4)(ix)).  Defendants violated 73 Pa. Cons. Stat. Ann. § 201-3, by, among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children.

330.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Pennsylvania Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

331.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

332.    Plaintiffs and Pennsylvania Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 per person (whichever is greater), treble damages, attorneys' fees and costs, and any additional relief the Court deems necessary or proper.

## COUNT 25

### *VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT*

### *(Brought on Behalf of the Texas Subclass)*

333.    Plaintiffs individually and on behalf of the Texas Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

334.    Defendants are "persons" as defined by Tex. Bus. & Com. Code Ann. § 17.45(3).

335.    Plaintiffs and Texas Subclass members are "consumers," as defined by Tex. Bus. & Com. Code Ann. § 17.45(4).

336.    Defendants advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code Ann. § 17.45(6).

CLASS ACTION COMPLAINT
Case No.
-60-
IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

337.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

338.    Defendants engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). Defendants engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

339.    Consumers, including Plaintiffs and Texas Subclass members, lacked knowledge about the above business practices, omissions, and misrepresentations because this information was known exclusively by Defendants.

340.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Texas Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

341.    Defendants received notice pursuant to Tex. Bus. & Com. Code Ann. § 17.505 concerning their wrongful conduct as alleged herein by Plaintiffs and Texas Subclass members. Plaintiffs and the Texas Subclass seek all monetary and non-monetary relief allowed by law, including economic damages, damages for mental anguish, treble damages for each act committed intentionally or knowingly, court costs, reasonably and necessary attorneys' fees, injunctive relief, and any other relief which the court deems proper.

## COUNT 26

### *VIOLATION OF VERMONT CONSUMER FRAUD ACT*

### *(Brought on Behalf of the Vermont Subclass)*

342.    Plaintiffs individually and on behalf of the Vermont Subclass, repeat and re-allege all previous Paragraphs, as if fully alleged herein.

343.    Plaintiffs and Vermont Subclass members are "consumers," as defined by Vt. Stat. Ann. tit. 9, § 2451a(a).

CLASS ACTION COMPLAINT
Case No.

-61-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

344.     Defendants' conduct as alleged herein related to "goods" or "services" for personal, family, or household purposes, as defined by Vt. Stat. Ann. tit. 9, § 2451a(b).

345.     Defendants are "sellers," as defined by Vt. Stat. Ann. tit. 9, § 2451a(c).

346.     Defendants advertised, offered, or sold goods or services in Vermont and engaged in trade or commerce directly or indirectly affecting the people of Vermont.

347.     Defendants engaged in unfair and deceptive acts or practices, in violation of Vt. Stat. Tit. 9, § 2453(a), by, among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children.

348.     Defendants intended to mislead Plaintiffs and Vermont Subclass members and induce them to rely on their misrepresentations and omissions.

349.     As a result of Defendants' deceptive acts and practices, Plaintiffs and Vermont Subclass members children were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

350.     Defendants' acts and practices caused or were likely to cause substantial injury to consumers, which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

351.     Defendants are presumed, as a matter of law under Vt. Stat. Ann. tit. 9, § 2457, to have intentionally violated the Vermont Consumer Protection Act because they failed to sell goods or services in the manner and of the nature advertised or offered.

352.     Defendants' violations present a continuing risk to Plaintiffs and Vermont Subclass members as well as to the general public.

353.     Plaintiffs and Vermont Subclass members seek all monetary and nonmonetary relief allowed by law, including injunctive relief, restitution, actual damages, disgorgement of profits, treble damages, punitive/exemplary damages, and reasonable attorneys' fees and costs.

CLASS ACTION COMPLAINT
Case No.

-62-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

**COUNT 27**

***VIOLATION OF VIRGINIA CONSUMER PROTECTION ACT***

***(Brought on Behalf of the Virginia Subclass)***

354.     Plaintiffs individually and on behalf of the Virginia Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

355.     The Virginia Consumer Protection Act prohibits "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14).

356.     Defendants are "suppliers," as defined by Va. Code Ann. § 59.1-198.

357.     Defendants engaged in the complained-of conduct in connection with "consumer transactions" with regard to "goods" and "services," as defined by Va. Code Ann. § 59.1-198. Defendants advertised, offered, or sold goods or services used primarily for personal, family or household purposes.

358.     Defendants engaged in deceptive acts and practices by using deception, fraud, false pretense, false promise, and misrepresentation in connection with consumer transactions, described herein.

359.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

360.     The above-described deceptive acts and practices also violated the following provisions of Va. Code Ann. § 59.1-200(A): misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; and advertising goods or services with intent not to sell them as advertised, or with intent not to sell them upon the terms advertised. Defendants violated Va. Code Ann. § 59.1-200(A), by, among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children.

361.     As a result of Defendants' deceptive acts and practices, Plaintiffs and Virginia Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy

CLASS ACTION COMPLAINT
Case No.

-63-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

362.    Plaintiffs and Virginia Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages; statutory damages in the amount of $1,000 per violation if the conduct is found to be willful or, in the alternative, $500 per violation, restitution, injunctive relief, punitive damages, and attorneys' fees and costs.

## COUNT 28

### *VIOLATION OF WISCONSIN DECEPTIVE TRADE PRACTICES ACT*
### *(Brought on Behalf of the Wisconsin Subclass)*

363.    Plaintiffs individually and on behalf of the Wisconsin Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

364.    Defendants are a "person, firm, corporation or association," as defined by Wis. Stat. § 100.18(1).

365.    Plaintiffs and Wisconsin Subclass members are members of "the public," as defined by Wis. Stat. § 100.18(1).

366.    With intent to sell, distribute, or increase consumption of merchandise, services, or anything else offered by Defendants to members of the public for sale, use, or distribution, Defendants made, published, circulated, placed before the public or caused (directly or indirectly) to be made, published, circulated, or placed before the public in Wisconsin advertisements, announcements, statements, and representations to the public which contained assertions, representations, or statements of fact which are untrue, deceptive, and/or misleading, in violation of Wis. Stat. § 100.18(1) as described herein.

367.    Defendants also engaged in the above-described conduct as part of a plan or scheme, the purpose or effect of which was to sell, purchase, or use merchandise or services not as advertised, in violation of Wis. Stat. § 100.18(9).

368.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Wisconsin Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy

CLASS ACTION COMPLAINT
Case No.
-64-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA 98040
TEL.: (206) 625-1326

1  through Defendants' acquisition and use of children's personal information, for Defendants' own

2  benefit, without the Class members' knowledge or verifiable parental consent.

3      369.   Defendants had an ongoing duty to all Defendants' customers to refrain from

4  deceptive acts, practices, plans, and schemes under Wis. Stat. § 100.18.

5      370.   Plaintiffs and Wisconsin Subclass members seek all monetary and non-monetary

6  relief allowed by law, including damages, reasonable attorneys' fees, and costs under Wis. Stat.

7  § 100.18(11)(b)(2), injunctive relief, and punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all Classes and Subclasses alleged

herein, respectfully request that this Court:

a)  Certify this case as a class action, appoint Plaintiffs as Class and Subclass
    representatives, and appoint Plaintiffs' counsel to represent the Classes and
    Subclasses;

b)  Find that Defendants' actions, as described herein, constitute: (i) violations of the
    State consumer protection laws invoked herein, (ii) breaches of the common law
    claim of intrusion upon seclusion in respect to the Multi-State Class; (iii) a violation
    of the right to privacy under California Constitution, Article I, Section 1; and (iv) a
    violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*.;

c)  Enter an order permanently enjoining Defendants from engaging in the unlawful
    conduct alleged herein;

d)  Award Plaintiffs and Class and Subclass members appropriate relief, including
    actual and statutory damages and punitive damages, in an amount to be determined
    at trial;

e)  Award equitable, injunctive, and declaratory relief as may be appropriate;

f)  Award all costs, including experts' fees, attorneys' fees, and the costs of
    prosecuting this action; and

g)  Grant such other legal and equitable relief as the Court may deem appropriate.

CLASS ACTION COMPLAINT
Case No.

-65-

IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all triable issues.

Dated: August 2, 2019                              Respectfully submitted,

/s/ *Matthew J. Ide*, WSBA No. 26002
**IDE LAW OFFICE**
Matthew J. Ide, WSBA No. 26002
7900 SE 28th Street, Suite 500
Mercer Island, WA  98040
Tel.: (206) 625-1326
Fax: (206) 622-0909
mjide@yahoo.com

**WHITFIELD BRYSON & MASON LLP**
Gary E. Mason (*pro hac vice forthcoming*)
5101 Wisconsin Ave., NW, Ste. 305
Washington, DC 20016
Phone: 202.640.1160
Fax: 202.429.2294
gmason@wbmllp.com

**KOZONIS & KLINGER, LTD.**
Gary M. Klinger (*pro hac vice forthcoming*)
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Phone: 312.283.3814
Fax: 773.496.8617
gklinger@kozonislaw.com

*Attorneys for Plaintiffs and*
*the Proposed Classes*

CLASS ACTION COMPLAINT
Case No.
-66-
IDE LAW OFFICE
7900 SE 28TH STREET, SUITE 500
MERCER ISLAND, WA  98040
TEL.: (206) 625-1326

# Exhibit 1

*Exhibit 7 - 2: Amazon's Response to Congressional Inquiry*



June 1, 2018

The Honorable Edward Markey
U.S. Senate
255 Dirksen Senate Office Building
Washington, DC 20510

The Honorable Joe Barton
U.S. House of Representatives
2107 Rayburn House Office Building
Washington, DC 20515

Senator Markey and Congressman Barton,

I am writing in response to your letter on May 10, 2018 regarding the Amazon Echo Dot Kids Edition. Thank you for your interest in our approach to children's privacy and safety online. At Amazon, customer trust is our guiding principle in navigating privacy issues. We know that we must get issues of privacy right in order to meet our customers' high expectations of us. This is particularly true when our customers are parents.

We launched the Amazon Echo in 2014, and since then we have heard from customers how much they love using Alexa in the home. As we received more of this feedback, we started to think about the benefits our FreeTime and FreeTime Unlimited services could offer families on Alexa. FreeTime is a suite of parental control tools we initially introduced in 2012 for parents to use on their tablets. Today, FreeTime allows parents to manage usage limits, content access, and educational goals on compatible Fire, Kindle, and Android devices. Next we launched FreeTime Unlimited, an optional kid content subscription service offering access to thousands of kid-friendly books, movies, TV shows, educational apps, and games on compatible Fire, Android, and Kindle devices. FreeTime and FreeTime Unlimited allow children to explore quality educational content, while providing parents peace of mind with easy-to-access parental controls for personalizing screen time limits, setting educational goals, filtering educational content, and more.

By adding the FreeTime and FreeTime Unlimited services to Alexa, we have included many new features we hope parents will love, including kid-friendly premium skills, a family intercom, kid-friendly music stations, Audible books, and kid-friendly responses. Through our Amazon Parent Dashboard, parents can review their children's activity in FreeTime, set a bedtime, and pause the device. Parents can also review everything their child has said to Alexa in FreeTime through the Alexa app.

We have taken a very careful approach to these products and services and to our other products for children in order to maintain customer trust. The answers to your specific questions are as follows:

**1. Is the audio of children's interactions with Echo Dot Kids Edition and FreeTime Unlimited recorded and saved? If yes, will these files be converted to text or another format, where will these files be stored, and what data security measures will be taken to protect this information?**

As with all Amazon Echo, Echo Plus, or Echo Dot devices, when the Echo Dot Kids Edition detects the wake word (Alexa, Amazon, Echo, or Computer), the light ring around the top of the device turns blue to indicate that the device is streaming audio to the Amazon cloud. In the Amazon cloud, our systems for speech recognition and natural language understanding convert the audio to text and determine the meaning of that text so Alexa can respond appropriately to the child's request. Data security is foundational to all Amazon services and was built into the Echo Dot Kids Edition and FreeTime on Alexa from the ground up. All audio streamed to the Amazon cloud is encrypted in transit, and voice recordings and the text transcripts of those recordings are securely stored in the Amazon cloud.

**2. Please explain parents' ability to review and delete any recordings of their children's interaction with Echo Dot Kids Edition and FreeTime Unlimited. Will parents also have the ability to delete other information collected by Amazon, such as records of content accessed by the child?**

Parents can review and delete specific voice recordings associated with their child's device by going to History in Settings in the Alexa App. Parents also can delete all voice recordings associated with their child's device at the Manage Your Content and Devices page at www.amazon.com/mycd. Parents can also contact Customer Service to request deletion of their child's profile and all personal information associated with their child's profile.

**3. Will Amazon maintain a profile on each child that uses Echo Dot Kids Edition or FreeTime Unlimited? If yes, what information will be kept in the profile? Will Amazon maintain a "voiceprint" that can be used to identify individual children?**

When a parent sets up Amazon FreeTime, the parent will first add a child profile to the Amazon Household in the parent's Amazon account. The parent provides their child's first name, birthdate, and gender when creating the profile. The parent can view the child's profile in the Amazon Parent Dashboard, where the parent can see their child's FreeTime on Alexa activity, including which skills (the equivalent of apps for Alexa) their child has used. We are always looking for opportunities to innovate to create better experiences for our customers. In the FreeTime on Alexa experience, we do not enable the creation of voice profiles and do not otherwise create a "voiceprint" to identify individual children.

**4. If a parent does not delete her child's data, how long does Amazon keep the recordings and other information collected by Echo Dot Kids Edition and FreeTime Unlimited?**

Voice recordings are retained for the parent's review until the parent deletes them in the Alexa App or at the Manage Your Content and Devices page described above. Parents can also contact Customer Service to request deletion of their child's profile and personal information associated with their child's profile (including voice recordings).

2

**5. Please list all third parties that have access to the data collected by Echo Dot Kids Edition and FreeTime Unlimited, and for what purpose they have been granted access to this data. How will Amazon ensure that partners with whom it shares such information employ adequate security measures?**

None of the experiences included with FreeTime Unlimited have access to or collect personal information, and we do not share audio recordings with third parties.

Parents can choose to grant their children access to regular Alexa skills that are not part of FreeTime Unlimited. If a parent grants access to any regular Alexa skills, those skills work the same way in FreeTime as they do in the normal Alexa experience. For instance, if a parent has granted a weather skill permission to access the device address and zip code to provide localized weather information, and the parent grants their child access to that weather skill in FreeTime on Alexa, the weather skill will continue to have access to that address and zip code information when used by the child. For all Alexa skills that collect personal information, we require the skill developer to (a) provide us with a privacy notice, which we post on the detail page for the skill in our skill store, (b) use and authorize others to access and use that information only for the purposes permitted by the user, and (c) ensure the information is collected, used, and transferred in accordance with the developer's privacy notice and applicable law.

In some cases, and as described in our Privacy Notice, we use third parties to perform services on our behalf, such as providing certain customer service functions. Those third parties have access to personal information needed to perform their functions but may not use it for other purposes.

**6. Will the information collected by Echo Dot Kids Edition or FreeTime Unlimited be used for marketing purposes in any way, including, but not limited to, creating profiles about children's likes and interests, making product recommendations on Amazon.com or the Amazon app, or delivering advertisements?**

We use the data collected by Echo Dot Kids Edition or FreeTime on Alexa to provide and improve the Alexa and FreeTime services. For instance, we may use information about the books, music, and skills a child uses to recommend other books, music, and skills available in the FreeTime Unlimited subscription that the child can access without any additional purchase. Children's FreeTime on Alexa activities are not used today for advertising or for purchase recommendations. However, we know customers find Amazon purchase recommendations valuable. If in the future we identify opportunities to provide more helpful recommendations to parents or otherwise improve parents' experiences by considering their children's FreeTime on Alexa activity (such as recommending to parents movies their family might enjoy watching together), we may pursue those opportunities.

**7. Within what range of distance can Echo Dot Kids Edition transmit and record the spoken voice of children? Describe all ways the recording and transmission functions are activated, the duration of recording/transmission mode after activation, and all methods for turning the device off.**

The Echo Dot Kids Edition device is designed to hear users from across the room. It uses on-device keyword spotting to detect the wake word (Alexa, Amazon, Echo, or Computer). When the device detects the wake word, it streams audio to the Amazon cloud to begin processing the request, including a fraction of a second of audio before the wake word. Users can also press the action button on the top of the device to begin speaking to Alexa. As with all Amazon Echo, Echo Plus, or Echo Dot devices, when

3

the Echo Dot Kids Edition detects the wake word or when the action button is pressed, the light ring around the top of the device turns blue to indicate that the device is streaming audio to the Cloud. The stream stops automatically once the question or request has been processed. If parents would like an additional indicator when audio is streaming to the cloud, within the sounds settings in the Alexa App they can enable a 'start of request sound,' a short audible tone that plays after the wake word is recognized to indicate that the device is streaming audio, and an 'end of request sound' that will play at the end of the request to indicate that the connection has closed and the device is no longer streaming audio. The parent or child can also turn off the device's microphone entirely by pushing the microphone on/off button on the top of the device. When the microphone on/off button turns red, the microphone is electronically disconnected. The device will not respond to the wake word, nor respond to the action button, until the microphone is reactivated by pushing the microphone on/off button again. From the Amazon Parent Dashboard at parents.amazon.com, parents can also pause Alexa, which prevents Alexa from responding until the parent unlocks it or the lock time expires.

**8. Please describe the default setting for the Echo Dot Kids Edition, including default settings for voice recording, range of listening, activation methods, information storing, and methods for turning off the device. How can users change these settings, and how does Amazon make users aware of methods for changing these settings?**

The default wake word for the Echo Dot Kids Edition is "Alexa." Parents can change the wake word to "Amazon," "Echo," or "Computer" in Settings in the Alexa App. The parent or child can turn off the microphone of Amazon Echo, Echo Plus, and Echo Dot by pushing the microphone on/off button on the top of the device. Just like with other Alexa voice recordings, parents can review and delete specific voice recordings associated with their child's device by going to History in Settings in the Alexa App. Parents can also delete all voice recordings associated with their child's device at the Manage Your Content and Devices page at www.amazon.com/mycd. Shopping, news, and local search for restaurants and businesses are automatically disabled for FreeTime on Alexa and cannot be turned on. Parents can choose whether to enable Alexa Calling & Messaging for FreeTime on Alexa. Parents can access parental controls through the Amazon Parent Dashboard at parents.amazon.com. On the Parent Dashboard, parents can review their child's activity, choose which skills their child can use, set a bedtime, and pause Alexa on the device. We inform parents of these settings and options through our Help content for Echo and Alexa, which is available in the Alexa app and on our website, and during the FreeTime on Alexa set-up process.

**9. If a parent does not consent to Amazon collecting information on her child, including recording and retaining voice recordings and all other data, can the child still use Echo Dot Kids Edition with collection turned off?**

Echo Dot Kids Edition is a voice-controlled speaker that leverages the Alexa voice service in the cloud to recognize and respond to children's requests. Echo Dot Kids Edition cannot be used without Amazon processing voice recordings. Alexa retains FreeTime on Alexa voice recordings to allow parents to review and listen to the requests their children make to Alexa, and to improve the child's experience and our Alexa and FreeTime services (such as training the speech recognition and natural language understanding systems mentioned above so Alexa can better understand children's requests). Consistent with the Children's Online Privacy Protection Act, we require permission from a parent before FreeTime on Alexa can be used on Echo Dot Kids Edition. Parents have the options to delete

4

their child's voice recordings and other personal information associated with their child's profile as described above.

**10.  Where does Amazon plan to post the privacy policy for the Amazon Echo Dot Kids Edition and FreeTime Unlimited offerings?**

We provide customers multiple places to view our privacy policy.  When parents set up the Echo Dot Kids Edition or FreeTime on Alexa, they must give verifiable parental consent, consistent with the Children's Online Privacy Protection Act.  In the set-up experience, we provide key information regarding how Amazon handles personal information collected from the Echo Dot Kids Edition, and we provide access to our Children's Privacy Disclosure.  Parents can also visit our Children's Privacy Disclosure at any time in the Alexa App or at www.amazon.com/help/childprivacy.  There is also a link on the product detail page for the Echo Dot Kids Edition labelled, "Children's privacy is important to Amazon. Learn more."  This link takes customers to the Alexa and Alexa Device FAQs page, where they can learn more about FreeTime on Alexa and how FreeTime on Alexa voice recordings are used, along with other information about Alexa and the Echo Dot Kids Edition device.  Parents can also ask Alexa directly, "Alexa, what is your privacy policy?"

**11.  What steps does Amazon take to comply with the Children's Online Privacy Protection Act (COPPA) in operating Echo Dot Kids Edition and FreeTime Unlimited? How does Amazon obtain verifiable parental consent before collecting personal information from children?**

We require verifiable parental consent before kid services like FreeTime on Alexa can be used.  Unless a parent has granted permission previously, the first time the parent attempts to set up FreeTime on Alexa, the parent will be prompted to provide verifiable parental consent on the Alexa app through either credit card verification or a one-time code sent via SMS.  The parent can review or change permissions by visiting the Manage Parental Consent page at www.amazon.com/manageparentalconsent or by contacting Customer Service.

**12.  Did Amazon work with child development experts while creating the Echo Dot Kids Edition? What mechanisms are in place, if any, to understand the impact of using the Echo Dot Kids Edition on children's development?**

We consulted third party child development experts during the development of FreeTime on Alexa and will continue to do so as we evolve the customer experience.  Because all families and children are different, one of our guiding principles in the development of all of our FreeTime experiences is to empower parents by providing robust and easy to use controls to manage their children's digital experiences.  Since we launched FreeTime on tablets six years ago, this approach has resonated well with millions of parents.

We believe Alexa provides an exciting opportunity for children to engage with educational and enriching content and explore their curiosity.  Children can listen to books, play music, challenge themselves with trivia games, and get answers to questions about science, nature, art, language, history, math, and countless other topics, all without needing to know how to read or engaging with a screen.  FreeTime on Alexa and FreeTime Unlimited provide parents the tools to manage these interactions between their child and Alexa as they see fit.  For example, parents can review and listen to all their children's voice recordings in the Alexa app, review their children's FreeTime Unlimited activity via the Parent

5

Dashboard, set bedtime limits, and easily pause the Echo Dot Kid's Edition whenever they like.  We have not designed, and do not intend, Echo Dot Kids Edition to be a digital babysitter or replacement for parenting.  In fact, one of the things that customers love about Alexa and Echo is the communal nature of the device – parents and kids can join in the learning and fun together.

Thank you again for your interest in these issues, and in our approach to building products for kids.


Sincerely,


Brian Huseman
Vice President, Public Policy

6